**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JACOVETTI LAW, P.C. et al.<br>PLAINTIFFS,<br><br>V.<br><br>JAMES EVERETT SHELTON, et al.<br>DEFENDANTS. | CIVIL ACTION NO.: 2:20-cv-00163-JDW<br><br>*Civil Action* |

**PLAINTIFF'S MOTION TO RE-OPEN CASE PURSUANT TO F.R.C.P. 60(b)  AND TO AMEND COMPLAINT PURSUANT TO F.R.C.P. 15(a)(2) AND IN OPPOSITION TO THE MOTION FOR SANCTIONS**

Plaintiff hereby moves this honorable court to reopen the Complaint pursuant to F.R.C.P. 60(b) that was dismissed on February 27, 2020 and permit the Complaint to be amended. Plaintiffs aver as follows:

1. Fed. R. Civ. P 60(b) authorizes a district court to grant a party relief from judgment for various specific reasons, as well as "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

2. Relief is appropriate under this catch-all provision only in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir. 1993).

3. Plaintiff filed this case on January 9, 2020.

4. An answer was filed on February 10, 2020.

5. A motion for judgment on the pleadings was submitted on February 11, 2020.

6. A motion for extension of time was filed on February 24, 2020 and granted on February 25, 2020.

7. Unintentionally, the motion for judgment went unopposed, and was granted on February 27, 2020.

8. Plaintiffs' counsel had stated in the motion to extend, that the amended complaint would respond to the "issues" in the motion for judgment.

9. Contemporaneously with this motion, the Disclosure Statements Pursuant To FRCP 7.1(a) is being filed for the remaining Plaintiffs.

10. Further, the amended complaint is attached as Exhibit 1 to this motion.

11. As such, Plaintiff requests that the Complaint be amended pursuant to F.R.C.P. 15(a)(2) which states "… a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.".

12. The amended complaint would respond to all alleged issues, specifically my removing the parties that the prior judgement was entered against, and only proceeding with the parties that have claims against defendants.

13. Further, Plaintiffs now have evidence of Shelton discussing his scheme and planning it with others. (See Exhibit D of the Proposed Amended Complaint – Transcripts).

14. In these calls, Defendant Shelton clearly is discussing his scheme, and how his entire enterprise works.

15. Specifically, he states things such as "I know other person's banks before I even file the case. I know how much money they have. Pillaging them that's the point" and "We're absolutely pillaging them." (see Exhibit D page 5, lines 4-6, 10-11).

16. He even admits what his scheme is: "I don't get out of bed for $500. But basically, what I'll do is I'll hit them up for - if it's a robo call or an ATDS call, I'll hit them up for $1,500 for 227(b), if they call me  more than twice, and if they call me two times or  more, that's a

violation of 227(c), because my number's on the do not call list." (See Exhibit D page 2, lines 7-13).

17. Then he further details finding others to perpetuate the scheme, "And you know, basically I'll be like, hey, have you got any calls from these guys? Yeah, I have. You know, they're on my list here somewhere. I mean, he gets way more calls than I do. So, and then, when I end up getting a judgment against them or end up getting paid from them, I'll say, Craig, man, look, you should go - you should sue them. I mean, and so, he sues them. And now he's going to get paid." (see Exhibit D page 4, lines 6-14.).

18. While brief, these recordings get to the heart of what Defendant Shelton does, and then uses these methods to further include others.

19. It is believed that these recordings may be the first evidence, in all of the **many** cases, that Shelton has initiated, that show his pattern of practice in intentional and wide-spread.

20. This comports with Shelton's well-known plan to not only sue companies, but when he is done, to encourage others to do so as well.

21. This is further evidenced by the manner in which defendants have filed an improperly pled motion for sanctions as well.

22. To claim Defendant Shelton has been '"publicly and humiliatingly disparaged" via Plaintiffs' claims' is so far over the top, that is borders on ridiculous.

23. Further, it is procedurally deficient as well, as there was no attempt to send a safe harbor letter, in this matter, merely the filing of the frivolous motion.

24. For the counterpoint, such a letter was in fact sent by Jacovetti Law, P.C. and Robert C. Jacovetti on December 5, 2018. (see Exhibit 2).

25. Ultimately, for the reasons set forth in that letter and the subsequent motion to vacate that

was filed by by Jacovetti Law, P.C. and Robert C. Jacovetti, that case was withdrawn against those parties three months later on February 6, 2019.

26. However, the damage as discussed in this case was still done, hence why they still have claims in this matter.

27. Further, this motion was submitted on the basis of "violating a court order" when in reality, motions for extension were filed, the first granted, and the second pending, though after today, will no longer be needed.

28. Finally, neither Plaintiffs, nor Plaintiffs' counsel had anything to do with the article that Defendants' counsel has attached.

29. As the court and Defendants counsel are aware, court filings are public record, and the fact that an article was written about Mr. Shelton, a well known serial filer of cases, and one who apparently boasts about this to others, is not grounds for sanctions.

30. As for sanctionable behavior, there is reason to believe that Mr. Reo, in fact, should be sanctioned, as he apparently goes along with this scheme by virtue of often joining in on the cases for Mr. Shelton after he files them.

31. This is clearly an attempt to shirk his ethical duties, as the scheme seems to be Shelton files the cases Pro Se, and makes all of the wild accusations he wants, such as again Plaintiffs.

32. If he goes too far and after the damage is done, and more specifically, if the victims, such as the Plaintiffs in this matter, don't simply pay to make him go away, then Mr. Reo comes in, and "cleans up" the accusations of Shelton.

33. This is clearly a pattern and practice as discussed in the numerous other cases of Shelton.

34. As such, Plaintiffs reserve the right to include Mr. Reo, and his firm, as defendants at a later time.

35. As such, this motion for sanctions by Defendants is of a sanctionable nature, and as such, we

ask the attorneys fees be paid to Plaintiffs for the response.

As such, Plaintiff requests that an extension of time be granted service and that an amended

complaint be granted.

Date: March 6, 2020          ____/s/ Joshua Thomas_____

Joshua L. Thomas and Associates
Joshua Thomas Esq.
Supreme Court ID No. 003992012
225 Wilmington-West Chester Pike
Suite 200
Chadds Ford, PA 19317
Phone: (215) 806-1733
Email: JoshuaLThomas@gmail.com

## **<u>VERIFICATION</u>**

The undersigned, Joshua L. Thomas, Esq. in the within action hereby states that he is the

Attorney for the Plaintiffs in this action and verifies that the statements in the foregoing pleading

are true and correct to the best of his knowledge, information, and belief.  The undersigned

understands that the statements therein are made subject to the penalties of 18 Pa. C.S. §4904

relating to unsworn falsifications to authorities.


**DATED:**  _March 6, 2020_          _/s/ Joshua L. Thomas_____
                                      Joshua L. Thomas, Esq.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JACOVETTI LAW, P.C. et al.<br>            PLAINTIFFS,<br><br>                    V.<br><br>JAMES EVERETT SHELTON, et al.<br>            DEFENDANTS. | CIVIL ACTION NO.: 2:20-cv-00163-JDW<br><br>*Civil Action* |

**O R D E R**

AND NOW, this        day of                    , 2020, it is hereby ORDERED and

DECREED that Plaintiffs' Motion To Re-Open and Amend is GRANTED.

Plaintiffs has _____ days from the filing of this order to file an Amended Complaint.

Further, Defendants' motion for sanctions is denied with prejudice.

Defendants are ordered to pay reasonable attorney's fees in the amount of $1,500.00

within 10 days to Plaintiff's counsel.

BY THE COURT:

J._____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JACOVETTI LAW, P.C. et al.
     PLAINTIFFS,

       V.

JAMES EVERETT SHELTON, et al.
     DEFENDANTS.

CIVIL ACTION NO.: 2:20-cv-00163-JDW

*Civil Action*

**CERTIFICATE OF SERVICE**

     I, Joshua L. Thomas, Esq., do hereby certify that service of a true and correct copy of the attached pleadings, and attachments thereto, was delivered by first class mail and/or electronic filing to the below named interested parties.

<u>Party</u>
Bryan A. Reo, Esq. P.O. Box 5100 Mentor, OH 44061

Date:  March 6, 2020          By: /s/ Joshua L. Thomas
                                     Joshua L. Thomas, Esq.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JACOVETTI LAW, P.C. et al.<br>  PLAINTIFFS,<br><br>V.<br><br>JAMES EVERETT SHELTON, et al.<br>  DEFENDANTS. | CIVIL ACTION NO.: 2:20-cv-00163-JDW<br><br>*Civil Action* |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO RE-OPEN CASE PURSUANT TO F.R.C.P. 60(b) AND TO AMEND COMPLAINT PURSUANT TO F.R.C.P. 15(a)(2) AND IN OPPOSITION TO THE MOTION FOR SANCTIONS**

I.     MOTION TO RE-OPEN AND AMEND

Plaintiff hereby moves this honorable court to reopen the Complaint pursuant to F.R.C.P. 60(b) that was dismissed on February 27, 2020 and permit the Complaint to be amended. Fed. R. Civ. P 60(b) authorizes a district court to grant a party relief from judgment for various specific reasons, as well as "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).  Relief is appropriate under this catch-all provision only in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir. 1993). Rule 60(b) thus provides "a grand reservoir of equitable power to do justice in a particular case." *Cox v. Horn*, 757 F.3d 113, 122 (3d Cir. 2014) (internal quotation marks omitted), cert. denied sub nom. *Wetzel v. Cox*, 135 S. Ct. 1548 (2015). As made patent in *Coltec Industries, Inc. v. Hobgood*, a movant's particular situation in the context of a Rule 60(b)(6) motion is vitally important. *Coltec Industries, Inc. v. Hobgood* 280 F.3d 262, 274–75 (3d Cir. 2002).

Plaintiff filed this case on January 9, 2020. An answer was filed on February 10, 2020. A motion for judgment on the pleadings was submitted on February 11, 2020. A motion for extension of time was filed on February 24, 2020 and granted on February 25, 2020. Unintentionally, the motion for judgment went unopposed, and was granted on February 27, 2020. Plaintiffs' counsel had stated in the motion to extend, that the amended complaint would respond to the "issues" in the motion for judgment. Contemporaneously with this motion, the Disclosure Statements Pursuant To FRCP 7.1(a) is being filed for the remaining Plaintiffs. Further, the amended complaint is attached as Exhibit 1 to this motion. As such, Plaintiff requests that the Complaint be amended pursuant to F.R.C.P. 15(a)(2) which states "… a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.". According to F.R.C.P. 15(a), leave to amend the pleadings is generally granted liberally. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). "Accordingly, if a claim is vulnerable to dismissal under *Rule 12(b)(6)*, but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

The amended complaint would respond to all alleged issues, specifically my removing the parties that the prior judgement was entered against, and only proceeding with the parties that have claims against defendants. Further, Plaintiffs now have evidence of Shelton discussing his scheme and planning it with others. (See Exhibit D of the Proposed Amended Complaint – Transcripts).

In these calls, Defendant Shelton clearly is discussing his scheme, and how his entire enterprise works. Specifically, he states things such as "I know other person's banks before I even file the case. I know how much money they have. Pillaging them that's the point" and "We're absolutely pillaging them." (see Exhibit D page 5, lines 4-6, 10-11). He even admits what his

scheme is: "I don't get out of bed for $500. But basically, what I'll do is I'll hit them up for - if it's a robo call or an ATDS call, I'll hit them up for $1,500 for 227(b), if they call me more than twice, and if they call me two times or more, that's a violation of 227(c), because my number's on the do not call list." (See Exhibit D page 2, lines 7-13).

Then he further details finding others to perpetuate the scheme, "And you know, basically I'll be like, hey, have you got any calls from these guys? Yeah, I have. You know, they're on my list here somewhere. I mean, he gets way more calls than I do. So, and then, when I end up getting a judgment against them or end up getting paid from them, I'll say, Craig, man, look, you should go - you should sue them. I mean, and so, he sues them. And now he's going to get paid." (see Exhibit D page 4, lines 6-14.). While brief, these recordings get to the heart of what Defendant Shelton does, and then uses these methods to further include others.

It is believed that these recordings may be the first evidence, in all of the **many** cases, that Shelton has initiated, that show his pattern of practice in intentional and wide-spread. This comports with Shelton's well-known plan to not only sue companies, but when he is done, to encourage others to do so as well.

## II.   Opposition to Motion For Sanctions

Defendants' motions utterly lacks merit and was filed for an improper purpose, and its denial should be compounded by a corresponding levy of sanctions and costs against Defendants. Defendants have used the filing of the motion, not as a means to filter a frivolous claim but as a bullying tactic intended to intimidate Plaintiffs into withdrawing legitimate claims This misuse of Rule 11 is in and of itself sanctionable. Indeed, the Advisory Committee notes point out that Rule 11 should not be used "to emphasize the merits of a party's position, to exact an unjust settlement,

[or] to intimidate an adversary into withdrawing contentions that are fairly debatable." See Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida, 827 F.2d 1454, 1458 (11th Cir. 1987) (affirming the denial of sanctions where the issues were fairly debatable and not easily resolved, and there was no clear binding precedent).

The standard under Rule 11 is "stringent" because sanctions "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes, 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases, and 3) increase tensions among the litigating bar and between [the] bench and [the] bar." Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988). While the focus of Rule 11 is on whether a claim is wholly without merit, and is not dictated by whether resources will be expended in deciding the motion, Rule 11 motions should conserve rather than misuse judicial resources. See Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 99 (3d Cir. 1988) ("Rather than misusing scarce resources, [the] timely filing and disposition of Rule 11 motions should conserve judicial energies.").

Defendants' motions fail not only for its lack of merit, but it also violates the ethical underpinnings of Rule 11. Rule 11 imposes a duty on the party seeking sanctions to be circumspect in pursuing such a drastic remedy and to not to use the device for an improper purpose lest it may discourage expansion of the law through creative legal theories. See Ario v. Underwriting Members of Syndicate 53 at Lloyds, 618 F.3d 277, 297 (3d Cir. 2010) (Rule 11 "should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories.")(citations omitted). Sanctions are a drastic remedy reserved for only the most extraordinary circumstances. See, Park v. Seoul Broad. Sys. Co., 2008 U.S. Dist. LEXIS 17277, at *1 (S.D.N.Y. Mar. 6, 2008). Whether a claim can survive on the merits is wholly distinct from

whether that claim is frivolous. See Abdelhamid v. Altria Group, Inc., 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007)("'When divining the point at which an argument turns from merely losing to losing and sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading.'")

To claim Defendant Shelton has been '"publicly and humiliatingly disparaged" via Plaintiffs' claims' is so far over the top, that is borders on ridiculous. Further, it is procedurally deficient as well, as there was no attempt to send a safe harbor letter,  in this matter, merely the filing of the frivolous motion. For the counterpoint, such a letter was in fact sent by Jacovetti Law, P.C. and Robert C. Jacovetti on December 5, 2018. (see Exhibit 2). Ultimately, for the reasons set forth in that letter and the subsequent motion to vacate that was filed by by Jacovetti Law, P.C. and Robert C. Jacovetti, that case was withdrawn against those parties three months later on February 6, 2019. However, the damage as discussed in this case was still done, hence why they still have claims in this matter.

Further, this motion was submitted on the basis of "violating a court order" when in reality, motions for extension were filed, the first granted, and the second pending, though after today, will no longer be needed. Neither Plaintiffs, nor Plaintiffs' counsel had anything to do with the article that Defendants' counsel has attached. As the court and Defendants counsel are aware, court filings are public record, and the fact that an article was written about Mr. Shelton, a well known serial filer of cases, and one who apparently boasts about this to others, is not grounds for sanctions. TO be clear, the first Plaintiff's or Plaintiffs' counsel was even aware of the article was after it was filed. No one was contacted about it, nor gave any information about it, all of it was from public records, both from this case, and presumably the numerous other cases filed by Shelton. Given that the intended amended complaint would remove all parties that had a judgment entered against them, and given the incredibly damning evidence recently received in regards to his recordings, it

seems clear that they claims are more than viable and should be permitted to proceed, and Defendants' motion for sanctions be denied with prejudice.

As for sanctionable behavior, there is reason to believe that Mr. Reo, in fact, should be sanctioned, as he apparently goes along with this scheme by virtue of often joining in on the cases for Mr. Shelton after he files them. This is clearly an attempt to shirk his ethical duties, as the scheme seems to be Shelton files the cases Pro Se, and makes all of the wild accusations he wants, such as again Plaintiffs. If he goes too far and after the damage is done, and more specifically, if the victims, such as the Plaintiffs in this matter, don't simply pay to make him go away, then Mr. Reo comes in, and "cleans up" the accusations of Shelton. This is clearly a pattern and practice as discussed in the numerous other cases of Shelton. As such, Plaintiffs reserve the right to include Mr. Reo, and his firm, as defendants at a later time. Further, this motion for sanctions by Defendants is of a sanctionable nature, and as such, we ask the attorneys fees be paid to Plaintiffs for the response.

Date: _March 6, 2020_                    By: _/s/ Joshua L. Thomas_____
                                              Joshua L. Thomas, Esq.

EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JACOVETTI LAW, P.C.<br>194 OLD COUNTRY ROAD<br>MINEOLTA, NY 11501,<br><br>ROBERT C. JACOVETTI<br>194 OLD COUNTRY ROAD<br>MINEOLTA, NY 11501,<br>        PLAINTIFFS,<br><br>            V.<br><br>JAMES EVERETT SHELTON<br>316 COVERED BRIDGE ROAD<br>KING OF PRUSSIA, PA 19406<br><br>AND<br><br>FINAL VERDICT SOLUTIONS<br>316 COVERED BRIDGE ROAD<br>KING OF PRUSSIA, PA 19406<br><br>AND<br><br>DAN BOGER<br>333 DEAN DRIVE<br>ROCKVILLE MARYLAND 20551<br><br>        DEFENDANTS. | CIVIL ACTION NO.: 2:20-cv-00163-JDW<br><br>*Civil Action* |

## <u>AMENDED COMPLAINT</u>

Plaintiffs, JACOVETTI LAW, P.C. and ROBERT C. JACOVETTI, ("Plaintiffs")[1], by and through their undersigned counsel, hereby submit this Complaint against Defendants, JAMES EVERETT SHELTON, (Shelton) and FINAL VERDICT SOLUTIONS and in support thereof, states as follows:

---

[1] The other plaintiffs have been removed from this action at this time.

I.    <u>**Parties and Jurisdiction**</u>

1. Plaintiff JACOVETTI LAW, P.C. is, a firm in the State of New York with a principle place of business located at 194 Old Country Road Mineolta, NY 11501.

2. Plaintiff ROBERT C. JACOVETTI is the principal of JACOVETTI LAW, P.C., PC with a principle place of business located at/within 194 Old Country Road Mineolta, NY 11501.

3. Defendant JAMES EVERETT SHELTON is of majority age residing in his home located at 316 Covered Bridge Road King of Prussia, PA 19406.

4. Defendant FINAL VERDICT SOLUTIONS is an entity run out of  JAMES EVERETT SHELTON's home located at 316 Covered Bridge Road King of Prussia, PA 19406.

5. Defendant DAN BOGER is of majority age residing in his home located at 333 Dean Drive Rockville, Maryland 20551.

6. Jurisdiction is based on 28 U.S. Code § 1332(a). The amount in controversy is in excess of $75,000.00;

7. Jurisdiction is also based on 28 U.S. Code § 1331 as the issue in controversy arising under the Constitution, laws, or treaties of the United States,

8. This Court has supplemental jurisdiction over Defendant pursuant to 28 U.S. Code § 1367 for all state claims.

9. At all times relevant and material hereto the named Defendant did act on its own individual behalf and as agents, servants, servicers, workmen and/or employees of each other, under each other's management, supervision, direction and control.

## II.   Background Material Facts

1. Defendant Shelton runs a scheme and is a well known serial filer of carbon copy complaints, alleging TCPA (Telephone Consumer Protection Act) and other similar actions against various firms and forcing them into settlement based on materially misrepresented facts and/or entirely fabricated scenarios that Shelton alleges.

2. Shelton then uses the firm that he runs out of his own home, Final Verdict Solutions, to essentially collect on the judgments that he forces upon these companies, in order to collect the settlement that was agreed to.

3. Often times, Shelton will either hold himself out as an attorney or use two specific attorneys for his scheme, Bryan Anthony Reo (REO) of REO LAW LLC which only uses a business address of PO Box 5100 Mentor, Ohio 44061 and Clayton S. Morrow of Morrow & Artim, P.C. 304 Ross St., 7th Fl. Pittsburgh, PA 15219.

4. At the time of filing, Shelton has 21 cases alone in the Eastern District of Pennsylvania that were filed and upon information and belief, 29 total around the country. [2]

5. To perpetuate this scheme, Shelton will often induce companies to call him, then claim

---

[2] 2:08-cv-77863-ER SHELTON v. TYCO INTERNATIONAL (U.S.) INC. et al; 2:96-cv-03437-LB HAFFEY, et al v. SOFAMOR DANEK GROUP, et al; 2:16-cv-01650-PD SHELTON v. EXPERIAN INFORMATION SOLUTIONS, INC. et al;
2:17-cv-02367-JHS SHELTON v. MARK D. GUIDUBALDI & ASSOCIATES LLC et al; 2:17-cv-02368-LDD SHELTON v. DOAN SOLUTIONS, LLC et al; 2:17-cv-02620-TJS SHELTON v. ICAPITAL; CASH GROUP INC. et al; 2:17-cv-02851-GJP SHELTON v. MERCHANT SOURCE INC. ("MSI") et al; 2:17-cv-03301-RBS SHELTON v. FUNDBOX, INC.; 2:17-cv-04063-RBS SHELTON v. NATIONAL; GAS & ELECTRIC, LLC; 2:18-cv-01655-MAK SHELTON v. CENTERPOINTE LENDING STUDENT LOAN SERVICES et al; 2:18-cv-02070-NIQA SHELTON v. TARGET ADVANCE LLC; 2:18-cv-02071-CFK SHELTON v. FAST ADVANCE FUNDING, LLC; 2:18-cv-02072-TJS SHELTON v. PARAMOUNT HOLDING COMPANY, LLC; 2:18-cv-02186-TJS SHELTON v. CAPITAL; ADVANCES LLC et al; 2:18-cv-02187-CFK SHELTON v. ARETE FINANCIAL; GROUP et al; 2:18-cv-02259-PBT SHELTON v. RFR CAPITAL; LLC et al; 2:18-cv-02545-MSG SHELTON v. NATIONAL; STUDENT ASSIST LLC et al; 2:18-cv-02759-GEKP SHELTON v. IVEST 360, LLC; 2:18-cv-03723-JDW SHELTON v. FCS CAPITAL; LLC et al; 5:19-cv-02466-JFL SHELTON v. TRIFECTA SOLAR LLC et al; and 2:18-cv-04375-CFK SHELTON et al v. DIRECT ENERGY, LP, et al .

they called him improperly, sue and they will settle rather than fight a protracted battle.

6. One of the more recent cases is against the Plaintiffs in this matter SHELTON v. FCS CAPITAL LLC et al at 2:18-cv-03723-JDW.

7. In that case, the original complaint was filed on August 30, 2018.

8. An amended complaint was then filed on November 13, 2018, and included Plaintiffs Jacovetti Law, P.C. and Robert C. Jacovetti.

9. A Safe harbor letter was sent informing Shelton of these bad acts. (See Exhibit A [incorporated from prior pleading]).

10. In fact, he attempted to get a default against these parties, however, once a motion to vacate said default was filed, he withdrew the case against Jacovetti Law, P.C. and Robert C. Jacovetti on February 6, 2019.

11. This was not before he and his attorneys threatened Jacovetti and his firm several times, with emails and phone calls and potentially defaming Mr. Jacovetti and his firm with the suit itself, as well as all other Plaintiffs.

12. At that time, Shelton's attorneys, Reo and Morrow both entered the case.

13. The problem with this case, is that it was setup for the sole purpose of extracting as settlement, based on false pretenses.

14. Substantially all of the "facts" alleged by Shelton are either palpable incorrect, or misstated to intentionally be misleading.

15. First,  the T-mobile usage screenshot and also the email that Shelton received did not come from any of the Plaintiffs, rather it came from an entity known as "Fast Advance" at the time in question.

16. Shelton sent information to Plaintiff Robert C. Jacovetti as "evidence" in that case. (See

Exhibits B and C – T-mobile usage screenshot and email to Shelton [incorporated from prior pleading]).

17. Further, Business Debt Experts and Business Debt Relief, LLC are not actual companies nor are they actual D/B/A's and as such, all facts alleged by Shelton in this regard are simply not accurate or have any relation with reality.

18. Michael Deangelis was an employee of Fast Advance Funding (FAF) during the time that Shelton is alleging.

19. In fact, Shelton even mentions this in his Complaint, yet still continues to reference the improper parties.

20. Mr. Deangelis was calling from his personal cell phone which none of the parties in this case have an authority over.

21. Further, Mr. Deangelis was sending emails from FAF after May 1st and therefore he could not be working for any Plaintiffs because the emails would have been sent from a Plaintiff entity, which they were not.

22. While the phone number 347-707-7942 is a number owned by FCS Capital LLC, the number could have been spoofed by Michael Deanglis in order to get back at the Plaintiffs for firing him.

23. Further, the application that Deanglis sent Shelton from his "FAF" email with Plaintiff's letter head was once again something that could have been done for "revenge" and the documents were something Deanglis had from his time working with Plaintiff before the time in question.

24. Further, paragraph 62 on page 14 of the complaint is a phone number that is owned by Plaintiff but that was not Deanglis' old number.

25. Further, on page 19, paragraph 110 on the Complaint, pursuant to internal call records, that number did not make the alleged call at that time.

26. On paragraph 71 on page 15 of the complaint, where calls are alleged, an internal review of the phone records show those calls did not happen at that time.

27. Further, the alleged number does not do text messaging, auto dialer or touch 1 calls, so these assertions are not accurate.

28. Additionally, Shelton claims that Anthony Diaz called him several times from May through August.

29. However, during this time, Shelton engaged in conversation with Anthony and expressed interest in Plaintiff's service, that is why Anthony kept calling him to follow up on previous conversations.

30. In Shelton's call log on 10/17/2018 a text was allegedly sent  from a number ending in 3787.

31. Plaintiffs have reviewed all activity for that extension for that day.

32. It was two calls that came in; nothing going out and that number does not, in fact, send texts.

33.  Further, Shelton says that Terrell called him multiple times and yet again, the phone records do not match this.

34. Finally, it is clear these actions are all being brought for the same purpose by Shelton and his attorneys and has been doing so for some time.

35. However, Shelton continues to try and pursue this case improperly against the remaining Defendants.

36. Defendant Dan Boger has often assisted Shelton in these matters, communicated directly

with Plaintiffs, and is incorporated by reference in the aforementioned actions.

37. Further, Plaintiffs now have evidence of Shelton discussing his scheme and planning it with others. (See Exhibit D – Transcripts).

38. In these calls, Defendant Shelton clearly is discussing his scheme, and how his entire enterprise works.

39. Specifically, he states things such as "I know other person's banks before I even file the case. I know how much money they have. Pillaging them that's the point" and "We're absolutely pillaging them." (see Exhibit D page 5, lines 4-6, 10-11).

40. He even admits what his scheme is: "I don't get out of bed for $500. But basically, what I'll do is I'll hit them up for - if it's a robo call or an ATDS call, I'll hit them up for $1,500 for 227(b), if they call me  more than twice, and if they call me two times or more, that's a violation of 227(c), because my number's on the do not call list." (See Exhibit D page 2, lines 7-13).

41. Then he further details finding others to perpetuate the scheme, "And you know, basically I'll be like, hey, have you got any calls from these guys? Yeah, I have. You know, they're on my list here somewhere. I mean, he gets way more calls than I do. So, and then, when I end up getting a  judgment against them or end up getting paid from them, I'll say, Craig, man, look, you should go - you should sue them. I mean, and so, he sues them. And now he's going to get paid." (see Exhibit D page 4, lines 6-14.).

42. While brief, these recordings get to the heart of what Defendant Shelton does, and then uses these methods to further include others.

43. This comports with Shelton's well-known plan to not only sue companies, but when he is done, to encourage others to do so as well.

44. It is believed that these recordings may be the first evidence, in all of the **many** cases, that Shelton has initiated, that show his pattern of practice in intentional.

## COUNT ONE – ALL DEFENDANTS
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

1. Plaintiff hereby incorporate by reference all preceding paragraphs as if set forth at length herein.

2. Further, there is an action for Racketeer Influenced and Corrupt Organizations Act (RICO), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968, because there was a "pattern of racketeering activity," which the statute defines as "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5); Tabas, 47 F.3d at 1290.

3. At all times relevant and material hereto the Defendants did use electronic transmission, including fax, internet, in order to engage in deceptive and fraudulent practices, to wit: the deceptive, fraudulent and unlawful taking, theft and attempted conversion of Plaintiff's property – all of which is in violation of 18 U.S. Code § 1343.

4. Further, there is an action for Racketeer Influenced and Corrupt Organizations Act (RICO), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968, because there was a "pattern of racketeering activity," which the statute defines as "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5); Tabas, 47 F.3d at 1290.

5. Defendants have established a 'pattern of activity', by an 'enterprise', which has committed 'predicate acts', those acts never occurring more than ten years apart from the previous act(s).

6.      The RICO statute is intended to address repeat, rather than one-shot, criminal activity.

7.      For this reason, "the heart of any RICO complaint is the allegation of a pattern of racketeering." *See Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 154 (1987).

8.       The RICO statute also proscribes activities involving the "collection of an unlawful debt" as a separate basis for a RICO claim. *See 18 U.S.C. § 1962(a)-(c).*

9.      Wary of seeing "garden variety" fraud cases dressed up as federal claims, federal courts have used the "pattern" element as a means "to trim off the excesses of a civil RICO claim." *See United States v. O'Connor*, 910 F.2d 1466, 1468 (7th Cir. 1990).

10.     Federal courts have revealed some difficulty articulating exactly what type of proof is sufficient to meet the "pattern" element. *See U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1266 (7th Cir. 1990) *("[A] definition for precisely what activity will constitute a 'pattern' for purposes of the RICO statute has eluded the federal courts.").*

11.     Nonetheless, the aforementioned facts support this claim in this action.

12.     In fact, the continued pursuit by Defendants clearly illustrates that the actions are still ongoing, to this day.

**WHEREFORE,** the Plaintiff demand judgment against all Defendants, individually, jointly and severally for damages, interests and costs of suit including:

a.   Punitive and/or treble damages;

b.   Damages as permitted by statute;

c.   Counsel fees;

d.   All other relief this Court deems necessary and just.

## COUNT TWO – SHELTON
### Wire Fraud

13. Plaintiffs hereby incorporate by reference all preceding paragraphs as if set forth at length herein.

14. At all times relevant and material hereto the Defendant did use electronic transmission, including fax, internet, in order to engage in deceptive and fraudulent practices, to wit: the deceptive, fraudulent and unlawful filing of friviolous lawsuits, including the one against the Plaintiffs in this matter.

15. Further, there is an action for Racketeer Influenced and Corrupt Organizations Act (RICO), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968, because there was a "pattern of racketeering activity," which the statute defines as "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5); Tabas, 47 F.3d at 1290.

16. There is no question Shelton, his collection firm, and his attorneys, file these frivolous suits for the sole purpose of extracting finds from companies.

17. As was previously stated, they have filed dozens of these cases, and continue to do so across the country.

18. There is no reason why this process should be permitted to continue.

**WHEREFORE,** the Plaintiff demand judgment against all Defendant, individually, jointly and severally for damages, interests and costs of suit including:

    e. Punitive and/or treble damages;

    f. Damages as permitted by statute;

    g. Counsel fees;

h.  All other relief this Court deems necessary and just.

## COUNT THREE – SHELTON
### Defamation

19.  Plaintiff hereby incorporates by reference all preceding paragraphs as if set forth at length herein.

20.  At all times relevant herein, Defendant has published statements both orally and through the filing of his complaints that are false and negative representations concerning Plaintiffs.

21.  At a minimum, Defendant has published these statements in the complaints that were filed.

22.  The statements made by Defendant are false, as the actions alleged was purely caused by Defendant's bad faith actions and/or other parties.

23.  Defendant knew, or should have known, that the statements that it made were false when made and that it had no factual basis for making the statements that it did, as Plaintiffs had notified Defendant that the statements were false for the aforementioned reasons and, nevertheless, Defendant continued to publish such statements up to and through the present time.

24.  The written statements and publications are libel per se.

25.  The oral statements and publications are slander per se.

26.  In addition, and despite the repeated notices from Plaintiff, Defendant has acted with malice by failing to withdraw this complaints.

27.  The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages, and harm to Plaintiff that are outlined more fully above and, as a result, Defendant are liable to compensate Plaintiff for the full amount

of actual, compensatory, and punitive damages, as well as other such relief, as permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that this Court enter judgment in their favor and against Defendant, as follows:

a.   Awarding Plaintiff actual damages against Defendant;
b.   Awarding Plaintiff damages for emotional distress against Defendant;
c.   Awarding Plaintiff attorneys' fees and costs against Defendant;
d.   Imposing any other appropriate monetary sanctions against Defendant; and
e.   Any other relief that this Court deems just and proper.

## COUNT FOUR – ALL DEFENDANTS
## UNJUST ENRICHMENT

28.   Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth at length herein.

29.   Under Pennsylvania law, a claim of unjust enrichment must allege the following elements: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit. *Com. ex. rel. Pappert v. TAP Pharm. Prods., Inc.*, 885A.2d 1127 (Pa. Commw. 2005).

30.   Because of the numerous aforementioned misrepresentations, Defendants attempt to be unjustly enriched by Plaintiffs.

31.   Defendants either through intentional actions or gross negligence continued to attempt to enriched through their actions.

32.   Accordingly, Defendants are attempting to receive a benefit  they are not entitled to.

**WHEREFORE,** the Plaintiff demand judgment against all Defendants, individually, jointly and severally for damages, interests and costs of suit including:

        a.   Punitive and/or treble damages;

        b.   Damages as permitted by statute;

        c.   Counsel fees;

        d.   All other relief this Court deems necessary and just.

Dated:                                ____/s/ Joshua Thomas _____

                                  Joshua Thomas, Esquire
                                  Joshua L. Thomas & Associates
                                  225 Wilmington-West Chester Pike
                                  Suite 200
                                  Chadds Ford, PA 19317
                                  Attorney for Plaintiff

# EXHIBIT D

Page 1

1

2

3

4

5

6

7

8

9

10

11    JAMES EVERETTE SHELTON

12

13    Won't sue for $500 per call too low 1m-JS1.wav

14    Collusion&Targeting Full 2m-JS1.wav

15    I know the persons bank account 9s JS-2 8.35.wav

16    Pillaging them that's the point 7s JS-1 45.30.wav

17

18

19

20

21

22

23

24

25

Page 2

1   Won't sue for $500 per call too low 1m-JS1.wav

2           MAN 1:  Well, because understand what I

3   do is -- and by the way, I don't settle for

4   anywhere near $500 a call.  I mean, that's

5   territory that I wouldn't even touch.  That's way

6   too low.

7           I don't get out of bed for $500.  But

8   basically, what I'll do is I'll hit them up for -

9   - if it's a robo call or an ATDS call, I'll hit

10  them up for $1,500 for 227(b), if they call me

11  more than twice, and if they call me two times or

12  more, that's a violation of 227(c), because my

13  number's on the do not call list.

14          MAN 2:  Okay.

15          MAN 1:  And then, what I'll do -- so

16  that's $3,000 then.  And if I'm smart, I'll ask

17  them -- I -- what I usually do, I usually send

18  them what's called consent letters.  Are you

19  familiar with that, what a consent letter is?

20          MAN 2:  Yes.  So --

21          MAN 1:  Okay, so you know what it looks

22  like, hey, you know, provide evidence of consent?

23          MAN 2:  Yes, like a (indiscernible)

24  out.

25          MAN 1:  Yeah, or --

Page 3

1  Collusion&Targeting Full 2m-JS1.wav

2          MAN 1:  What -- okay, you find a

3  company, they call you.  I mean, are you then

4  going to go say hey, Craig, Craig Cunningham or

5  these other -- Rayburn or whoever, hey, Michael

6  here is an easy target?

7          MAN 2:  Hell yeah. (Laughs)  That's the

8  -- well, absolutely because what we do is --

9  well, not you in particular, but like, what we'll

10  do is we'll say hey, yeah, you guys just paid me

11  X number of dollars, or hey, you know, I just

12  collected a judgment against these guys.  I just

13  made $20,000.

14          Yo, any of you guys got any calls?

15  Yeah, I sure have.  Let's go after them.  I mean,

16  absolutely.  I'm not gonna --

17          MAN 1:  But how would you go after

18  them?  But I don't understand how you'd go after

19  them, because they have to -- they can't initiate

20  the calls.

21          MAN 2:  No, the other people that have

22  gotten the calls.  Like let's say Craig

23  Cunningham --

24          MAN 1:  Yeah?

25          MAN 2:  -- got called from them.

1   Craig, so Craig and I had known about Greenstar
2   Capital since, I mean, they called me in like
3   February -- no, September 2017.  And
4   understanding that Craig and I talk like, almost
5   every day.  I mean, we talk a lot.
6          And you know, basically I'll be like,
7   hey, have you got any calls from these guys?
8   Yeah, I have.  You know, they're on my list here
9   somewhere.  I mean, he gets way more calls than I
10  do.  So, and then, when I end up getting a
11  judgment against them or end up getting paid from
12  them, I'll say, Craig, man, look, you should go -
13  - you should sue them.  I mean, and so, he sues
14  them.  And now he's going to get paid.
15          MAN 1:  But, so, but how does he --
16          MAN 2:  (indiscernible) --
17          MAN 1:  -- but what if they haven't
18  called him ever?
19          MAN 2:  Well, no, they have called him.
20          MAN 1:  Ah.
21          MAN 2:  I mean, I'm not saying -- he
22  doesn't just make this up and be like, oh, yeah,
23  this company called me, let me just file a
24  complaint, you know, I don't know.  Obviously, he
25  has been called and knows them.

Page 5

1          MAN 1:  But what would put --
2    I know the persons bank account 9s JS-2 8.35.wav
3          MAN 1:  And meanwhile, I know, I know
4    other person's banks before I even file the case.
5    I know how much money they have.
6    Pillaging them that's the point 7s JS-1 45.30.wav
7          MAN 1:  How do you justify that
8    (indiscernible) --?
9          MAN 2:  No, no, you're right.  No,
10   we're pillaging them, no.  We're absolutely
11   pillaging them.  I mean, that's the -- that's the
12   point.
13
14
15
16
17
18
19
20
21
22
23
24
25

1              C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

7

8

9    _____

10

11   Veritext Legal Solutions

12   330 Old Country Road

13   Suite 300

14   Mineola, NY 11501

15

16   Date: February 19, 2020

17

18

19

20

21

22

23

24

25

| | | | |
|---|---|---|---|
| **1** | ah  4:20 | **e** | **i'm**  2:16 3:16 4:21 |
| **1**  1:16 2:2,15,21,25 | atds  2:9 | e  6:1 | **j** |
|   3:2,17,24 4:15,17 | **b** | **easy**  3:6 | **james**  1:11 |
|   4:20 5:1,3,6,7 | **b**  2:10 | **everette**  1:11 | **js**  1:15,16 5:2,6 |
| **1,500**  2:10 | **bank**  1:15 5:2 | **evidence**  2:22 | **js1.wav**  1:13,14 |
| **11501**  6:14 | **banks**  5:4 | **f** |   2:1 3:1 |
| **19**  6:16 | **basically**  2:8 4:6 | **f**  6:1 | **judgment**  3:12 |
| **1m**  1:13 2:1 | **bed**  2:7 | **familiar**  2:19 |   4:11 |
| **2** | **c** | **february**  4:3 6:16 | **justify**  5:7 |
| **2**  1:15 2:14,20,23 | **c**  2:12 6:1,1 | **file**  4:23 5:4 | **k** |
|   3:7,21,25 4:16,19 | **call**  1:13 2:1,4,9,9 | **find**  3:2 | **know**  1:15 2:21,22 |
|   4:21 5:2,9 |   2:10,11,13 3:3 | **foregoing**  6:4 |   3:11 4:6,8,24,24 |
| **20,000**  3:13 | **called**  2:18 3:25 | **full**  1:14 3:1 |   5:2,3,3,5 |
| **2017**  4:3 |   4:2,18,19,23,25 | **g** | **known**  4:1 |
| **2020**  6:16 | **calls**  3:14,20,22 | **getting**  4:10,11 | **knows**  4:25 |
| **227**  2:10,12 |   4:7,9 | **go**  3:4,15,17,18 | **l** |
| **2m**  1:14 3:1 | **can't**  3:19 |   4:12 | **laughs**  3:7 |
| **3** | **capital**  4:2 | **going**  3:4 4:14 | **ledanski**  6:3 |
| **3,000**  2:16 | **case**  5:4 | **gonna**  3:16 | **legal**  6:11 |
| **300**  6:13 | **certify**  6:3 | **gotten**  3:22 | **letter**  2:19 |
| **330**  6:12 | **collected**  3:12 | **greenstar**  4:1 | **letters**  2:18 |
| **4** | **collusion&targe...** | **guys**  3:10,12,14 | **let's**  3:15,22 |
| **45.30.wav**  1:16 5:6 |   1:14 3:1 |   4:7 | **list**  2:13 4:8 |
| **5** | **company**  3:3 4:23 | **h** | **look**  4:12 |
| **500**  1:13 2:1,4,7 | **complaint**  4:24 | **haven't**  4:17 | **looks**  2:21 |
| **7** | **consent**  2:18,19,22 | **hell**  3:7 | **lot**  4:5 |
| **7s**  1:16 5:6 | **country**  6:12 | **hey**  2:22 3:4,5,10 | **low**  1:13 2:1,6 |
| **8** | **craig**  3:4,4,22 4:1 |   3:11 4:7 | **m** |
| **8.35.wav**  1:15 5:2 |   4:1,4,12 | **he's**  4:14 | **man**  2:2,14,15,20 |
| **9** | **cunningham**  3:4 | **hit**  2:8,9 |   2:21,23,25 3:2,7 |
| **9s**  1:15 5:2 |   3:23 | **hyde**  6:3 |   3:17,21,24,25 4:12 |
| **a** | **d** | **i** |   4:15,16,17,19,20 |
| **absolutely**  3:8,16 | **date**  6:16 | **indiscernible**  2:23 |   4:21 5:1,3,7,9 |
|   5:10 | **day**  4:5 |   4:16 5:8 | **mean**  2:4 3:3,15 |
| **account**  1:15 5:2 | **doesn't**  4:22 | **initiate**  3:19 |   4:2,5,9,13,21 5:11 |
| **accurate**  6:4 | **dollars**  3:11 | **it's**  2:9 | **michael**  3:5 |
| | **don't**  2:3,7 3:18 | **i'll**  2:8,8,9,15,16 | **mineola**  6:14 |
| |   4:24 |   4:6,12 | **money**  5:5 |

| n | | |
|---|---|---|
| **n**  6:1 | | |
| **near**  2:4 | | |
| **number**  3:11 | | |
| **number's**  2:13 | | |
| **ny**  6:14 | | |

| o |
|---|
| **o**  6:1 |
| **obviously**  4:24 |
| **oh**  4:22 |
| **okay**  2:14,21 3:2 |
| **old**  6:12 |

| p |
|---|
| **paid**  3:10 4:11,14 |
| **particular**  3:9 |
| **people**  3:21 |
| **persons**  1:15 5:2 |
| **person's**  5:4 |
| **pillaging**  1:16 5:6 |
|   5:10,11 |
| **point**  1:16 5:6,12 |
| **proceedings**  6:5 |
| **provide**  2:22 |
| **put**  5:1 |

| r |
|---|
| **r**  6:1 |
| **rayburn**  3:5 |
| **record**  6:5 |
| **right**  5:9 |
| **road**  6:12 |
| **robo**  2:9 |

| s |
|---|
| **saying**  4:21 |
| **send**  2:17 |
| **september**  4:3 |
| **settle**  2:3 |
| **shelton**  1:11 |
| **smart**  2:16 |

| |
|---|
| **solutions**  6:11 |
| **sonya**  6:3 |
| **sue**  1:13 2:1 4:13 |
| **sues**  4:13 |
| **suite**  6:13 |
| **sure**  3:15 |

| t |
|---|
| **t**  6:1,1 |
| **talk**  4:4,5 |
| **target**  3:6 |
| **territory**  2:5 |
| **that's**  1:16 2:4,5 |
|   2:12,16 3:7 5:6,11 |
|   5:11 |
| **they're**  4:8 |
| **times**  2:11 |
| **touch**  2:5 |
| **transcript**  6:4 |
| **true**  6:4 |
| **twice**  2:11 |
| **two**  2:11 |

| u |
|---|
| **understand**  2:2 |
|   3:18 |
| **understanding**  4:4 |
| **usually**  2:17,17 |

| v |
|---|
| **veritext**  6:11 |
| **violation**  2:12 |

| w |
|---|
| **way**  2:3,5 4:9 |
| **we'll**  3:9,10 |
| **we're**  5:10,10 |
| **what's**  2:18 |
| **won't**  1:13 2:1 |
| **wouldn't**  2:5 |

| x |
|---|
| **x**  3:11 |

| y |
|---|
| **yeah**  2:25 3:7,10 |
|   3:15,24 4:8,22 |
| **yo**  3:14 |
| **you'd**  3:18 |
| **you're**  5:9 |

EXHIBIT 2

# Joshua L. Thomas & Associates, PLLC

**Joshua L. Thomas, Esq.**
225 Wilmington-West Chester Pike
Suite 200
Chadds Ford, PA 19317
Phone:215-806-1733
Fax: 888-314-8910
E-mail: JoshuaLThomas@gmail.com

December 5, 2018

**Re: SHELTON v. FCS CAPITAL LLC, YASHAYEV, SHARGEL, JACOVETTI LAW, P.C. and ROBERT C. JACOVETTI; Docket: 2:18-cv-03723-NIQA**

Subject: **Matter regarding JACOVETTI LAW, P.C. and ROBERT C. JACOVETTI**

Dear Mr. Shelton,

In regard to the above-referenced matter, this letter should be considered a correspondence sent for the purposes of F.R.C.P 11 and is being sent 21 days prior to a motion for sanctions being filed against you.  As you are well aware at this point, Mr. Jacovetti and his firm have not been involved in **any** of the allegations cited in your amended complaint. Further, even if they were, which again, they were not, any involvement on their party would not only not be a violation of the claims you are raising, and your claims are clearly raised in bad faith as an attempt at forcing a settlement under threat of attempted duress of my clients.

Further, as has been previously made clear to you, any claims against FCS Capital, LLC or any of the other named defendants are completely meritless and the Amended Complaint not only failed to show any merit in the case, but actually made it worse by adding in additional parties. This letter is our one offer to let you withdraw the entire pleading at this time, and not face the threat of sanctions against you. Further, while you mailed copies of the amended complaint to at

least some of the Defendants around November 29, 2018, as you must be well aware, there has been no proper service according to the Federal Rules of Procedure on any Defendants whatsoever, nor has anyone accepted service, particularly since regular mail is not a proper method, especially for an initial pleading.

Further, As you are attempting to hold yourself out as an attorney on several of the documents filed with the court, you could not only face sanctions in this case, but also with the state bar or bars where you seek to practice, face potential liability with your law school, if you are enrolled, and face insurance issues with any firm you attempt to work with or if you attempt to self-insure yourself if you do attempt to go into practice. Filing a frivolous lawsuit is a very serious matter and the best chance to escape relatively unscathed professionally as well as personally is to immediately withdraw this suit. If you have any questions, I can be reached at 215-806-1733.

Thank you for your consideration,

_/s/ Joshua Thomas_____
Joshua Thomas, Esq.