## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACOVETTI LAW, P.C. et al.
    PLAINTIFFS,

V.

JAMES EVERETT SHELTON, et al.
    DEFENDANTS.

CIVIL ACTION NO.: 2:20-cv-00163-JDW

*Civil Action*

## SUR REPLY IN SUPPORT OF

## PLAINTIFF'S MOTION TO RE-OPEN CASE PURSUANT TO F.R.C.P. 60(b) AND

## TO AMEND COMPLAINT PURSUANT TO F.R.C.P. 15(a)(2)

I.    RES JUDICATA AND COLLATERAL ESTOPPEL DO NOT ACT AS DEFENSES TO THE AMENDED COMPLAINT

"Federal law applies res judicata or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008) (internal quotation marks omitted). The third factor "generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 277 (3d Cir. 2014) (citations and internal quotations omitted). As such, claim preclusion and res judicata doctrines require the party asserting the bar to show that there has been a final judgment on the merits in a prior suit involving the same parties (or their privies) and a subsequent suit based on the same cause of action. *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d. Cir. 1984) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 332, 326 n.5 (1979)). In this case, none of these conditions were not met as to the Plaintiffs as stated in the

Amended Complaint. Accordingly, since the issues could not have been and were not already litigated, there is no defense of collateral estopped or res judicata available to any defendants in the amended complaint.

In this case, assuming the amended complaint is permitted to proceed, neither res judicata or collateral estoppel would apply to Jacovetti Law, P.C. or Mr. Jacovetti. The fact of the matter is, Shelton intuitionally included them in an amended complaint to try and get funds out of them, as well as to try and encourage others to sue them and when it was apparent there would be substantial push back on that, they were withdrawn a few months later. This was not before there were substantial threats made against Jacovetti's firm and Mr. Jacovetti by Shelton, including when Shelton held himself out as an attorney. Further, based on the transcript, it is apparent Shelton is giving advice to others in order to try and get them to sue, and immediately after the amended complaint was filed, Jacovetti was directly receiving similar messages from parties claiming they were responsible for improper calls. These issues were not part of the prior suit, nor were Jacovetti or Jacovetti Law included as parties in any judgment. As such, neither Res Judicata or Collateral Estoppel would apply, and their suit should be permitted to proceed.

II.     THE JUDICIAL PROCEEDINGS PRIVILEGE DOES NOT APPLY TO STATEMENTS MADE TO ENCOURAGE OTHERS TO BRING FRIVOLOUS LAWSUITS

Pennsylvania law closely guards the ability of a person whose reputation has been injured by defamatory statements to obtain redress for such injury. *American Future Systems v. Better Business Bureau*, 592 Pa. 66, 923 A.2d 389 (2007). In *American Future Systems v. Better Business Bureau*, the Court explained that the Pennsylvania Constitution "places reputational

interests on the highest plane, that is, on the same level as those pertaining to life, liberty, and property." *Id.* at 77 n.7, 923 A.2d at 395 n.7; *see* PA. CONST. art. I §1 ("All men . . . have certain inherent and indefeasible rights, among which are those of enjoying and defending . . . reputation . . .."); *id.* §11 ("[E]very man for an injury done him in his . . . reputation shall have remedy by due course of law . . .."); *see also Norton v. Glenn*, 580 Pa. 212, 225-26, 860 A.2d 48, 56 (2004) ("The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being . . .." (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22, 110 S. Ct. 2695, 2708 (1990))). *See generally Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S. Ct. 669, 676 (1966) (recognizing that "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation").

Courts have also referenced such policy considerations to limit application of the privilege in certain instances where those considerations would not be implicated. The *Post* Court observed: "The essential realm of protected communication is not . . . without bounds. Rather, the protected realm has traditionally been regarded as composed only of those communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." *Post v. Mendel*, 510 Pa. 213, 220, 507 A.2d 351, 355 (1986). As in this case, there is language not protected; specifically by including Jacovetti, it appears, and there is evidence that, Mr. Shelton did so only to encourage other to improperly sue Jacovetti as well, in order to make money off of those suits. That language is not protected.

As previously stated, the amended complaint would respond to all alleged issues, by removing the parties that the prior judgement was entered against, and only proceeding with the parties that have claims against defendants. Further, Plaintiffs now have evidence of Shelton

discussing his scheme and planning it with others, and there was evidence, more if which can be procured through discovery, that Shelton intended on having others sue as well. (See Exhibit D of the Proposed Amended Complaint – Transcripts – incorporated by reference). Further, he was likely getting a kick back on these additional suits as well, given his statements in the transcripts, his attorney representing that he will not get involved in cases without prepping it first. That is also part of how he has been unjustly enriched. Additionally, these statements should not be protected by the judicial pleadings privilege, based on the

Defendant Shelton clearly is discussing his scheme, and how his entire enterprise works. Specifically, he states things such as "I know other person's banks before I even file the case. I know how much money they have. Pillaging them that's the point" and "We're absolutely pillaging them." (see Exhibit D page 5, lines 4-6, 10-11). He even admits what his scheme is: "I don't get out of bed for $500. But basically, what I'll do is I'll hit them up for - if it's a robo call or an ATDS call, I'll hit them up for $1,500 for 227(b), if they call me more than twice, and if they call me two times or more, that's a violation of 227(c), because my number's on the do not call list." (See Exhibit D page 2, lines 7-13).

Then he further details finding others to perpetuate the scheme, "And you know, basically I'll be like, hey, have you got any calls from these guys? Yeah, I have. You know, they're on my list here somewhere. I mean, he gets way more calls than I do. So, and then, when I end up getting a judgment against them or end up getting paid from them, I'll say, Craig, man, look, you should go - you should sue them. I mean, and so, he sues them. And now he's going to get paid." (see Exhibit D page 4, lines 6-14.). While brief, these recordings get to the heart of what Defendant Shelton does, and then uses these methods to further include others.

It is believed that these recordings may be the first evidence, in all of the **many** cases, that Shelton has initiated, that show his pattern of practice in intentional and wide-spread. Further, it shows discovery is needed to show how many others he has primed to try and bring similar suits, specifically against Jacovetti and Jacovetti Law. This comports with Shelton's well-known plan to not only sue companies, but when he is done, to encourage others to do so as well.

As such, the motion to re-open should be granted, the motion to amend should be permitted and the case should be permitted to proceed on its merits.

Date: _March 23, 2020_____          By:_/s/ Joshua L. Thomas_____
                                                         Joshua L. Thomas, Esq.