IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOVETTI LAW, P.C., et al., *Plaintiffs*, v. JAMES EVERETT SHELTON, et al., *Defendants*. | Case No. 2:20-cv-00163-JDW |

MEMORANDUM

Day-to-day, this Court sees lawyers of many different stripes. They have different specialties, they come from different places, and they have different backgrounds. In general, they conduct themselves with professionalism. They advocate for their clients while respecting the Court and the judicial system. In so doing, they justify the faith that our founders had in an adversarial system—a faith that the Court shares. Indeed, as a rule, the Court is honored to share a profession with the lawyers who appear before it.

Then there is Joshua Thomas. Thomas has appeared before the Court twice, in this case and in a predecessor. Throughout those cases, he has disregarded the rules and deadlines that ensure cases move in an orderly way. Even worse, he has ignored this Court's Orders. In light of all of that, the Court has now issued two Orders to Show Cause why the Court should not sanction Thomas. At a hearing to address the first Order, Thomas was not contrite. To the contrary, he lied to the Court about the reason for his actions, on the record and under oath. Following that hearing, the Court afforded him the opportunity to respond to the proposed sanctions in writing. Thomas finally showed a little bit of contrition, but given his history, the Court does not believe it. Accordingly, the Court will sanction Mr. Thomas.

The Court's sanctions here are harsh because less severe sanctions do not seem to get through to Thomas. However, the Court will reduce the monetary sanction that it proposed, in recognition of the arguments that Thomas makes in his written response.

## BACKGROUND

### A. Thomas's History Before The Court

#### 1. The TCPA case

Thomas has been counsel in two, related cases before the Court. In *Shelton v. FCS Capital LLC, et al.*, No. 2:18-cv-3723 (the "TCPA Case"), Thomas represented FCS Capital LLC, Jacovetti Law P.C., Emil Yashayev, Barry Shargel, and Robert Jacovetti in a case in which the plaintiff alleged that the defendants violated the Telephone Consumer Protection Act. Thomas did not file a timely answer in that case, and a default was entered against his clients. He argued that he was confused about his deadline to answer, and the Court therefore vacated the default. (TCPA Case ECF No. 16). After the Court set a schedule for that case, Mr. Thomas did not respond to any of the discovery that Shelton served on his clients, including requests for admission. As a result, pursuant to Fed. R. Civ. P. 35, all of the requests were deemed admitted.

On September 17, 2019, Shelton moved for summary judgment in the TCPA Case. Under the Court's local rules, the deadline to respond was October 1, 2010. Thomas missed that deadline. On October 8, 2019, Thomas filed a motion asking for two more weeks to respond, until October 22, 2019. Thomas's filing did not offer a meaningful explanation about why he needed more time. But it did say, "There will be no further extension needs after that." (TCPA Case ECF No. 39.)

That same day, the Court struck Shelton's summary judgment motion because it did not include a separate statement of undisputed material facts, as the Court's policies and

procedures require. Shelton re-filed his motion the same day. The renewed motion was identical as the one that he filed before, but it added a separate statement of facts. Thomas's deadline to file a response to the renewed motion was October 22, 2019, the date that he had requested for a deadline.

When the time came, though, Thomas was not ready to respond to the summary judgment motion, even though he said he would be and had by then possessed the motion for five weeks. At 4:07 p.m. on October 22, Thomas filed another motion for a two-week extension to respond to the summary judgment motion. The motion was identical to the one he had filed on October 8 in every respect, except that it changed the requested deadline. It even made the same representation about not needing any additional extensions. It did not, however, make any effort to show good cause or to explain why he waited until after 4pm on the Friday that the response was due to seek an extension. So the Court denied the extension motion shortly after it was filed. Thomas then elected not to file any response to the summary judgment motion.

While summary judgment briefing was occurring, the Court entered an order requiring Thomas to file a disclosure statement on behalf of FCS Capital LLC pursuant to Fed. R. Civ. P. 7.1. On October 24, 2019, he did so. (TCPA Case ECF No. 46.)

On December 11, 2019, the Court granted Shelton's summary judgment motion. Under Local Rule of Civil Procedure 7.1, that decision triggered a 14-day period for Thomas's clients to seek reconsideration of the Court's Order. They did not meet that deadline. Instead, they waited an extra month, until January 27, 2020, to seek reconsideration. The Court denied that motion as untimely.

2. This case

In between the Court's summary judgment ruling and Thomas's belated reconsideration motion, Thomas filed this case against Shelton and Shelton's company Final Verdict Solutions on behalf of FCS Capital, Jacovetti Law, Yashayev, Shargel, and Jacovetti. When he filed this case, he neglected to file a disclosure statement pursuant to Rule 7.1. On January 27, 2020, the Court ordered Thomas to file disclosure statements for FCS Capital and Jacovetti Law within seven days. He ignored that Order. So, on February 14, 2020, the Court issued an Order to Show Cause why it should not sanction Thomas for failing to comply. The Court gave Thomas seven days to respond, meaning the response was due on February 21. He did not file a timely response.

Instead, on February 24, 2020, Thomas filed a motion for an extension of time. In the Motion, he did not explain why he had been unable to file the disclosure statement or what circumstances required more time to respond to the Order to Show Cause. He also did not explain why he was filing after the Court deadline, other than a footnote with an allusion to problems e-filing. The Court issued an Order noting that Thomas had not shown good cause for the extension, let alone excusable neglect. However, given the significance of imposing sanctions, the Court gave Thomas until February 28 to file his response. The Court noted that it would not grant any further extensions.

Meanwhile, on February 11, 2020, Shelton and FVS answered the complaint in this case and moved for judgment on the pleadings. In an unsurprising twist, Thomas failed to respond. So, on February 27, 2020, the Court granted the motion as unopposed.

On February 28, Thomas filed another motion for an extension of time to respond to the Court's Order to Show Cause, even though the Court had told him it would not permit further extensions. In his motion, Thomas asked the Court to allow him until March 9 to respond, but he did not even try to explain why he needed that time. Instead, he talked

about his intent to file an amended pleading—an issue having nothing to do with his required response to the Order to Show Cause. On March 1, Shelton and FVS filed a motion for sanctions pursuant to 28 U.S.C. § 1927. The Court scheduled a hearing on the extension motion and the sanctions motion.

On March 6, Thomas filed a motion to reopen the case pursuant to Fed. R. Civ. P. 60(b) and to file an amended complaint. He also, at long last, filed a corporate disclosure statement for FCS Capital and Jacovetti Law. But he still did not bother to respond to the Court's Order to Show Cause, nor did he include in any of his filings an explanation as to why he had taken so long to file the corporate disclosure statement.

The Court held a hearing on March 12, 2020. During the hearing, the Court placed Thomas under oath. Thomas claimed that he did not file the corporate disclosure statement because he was waiting for information from FCS Capital. However, the Court finds his testimony on this point not to be credible. Indeed, in October 2019, Thomas filed a corporate disclosure on behalf of FCS Capital in the TCPA Case. He could not explain why he needed more information a few months later in order to file the same disclosure statement. That contradiction, coupled with the Court's observation of Thomas during the hearing, leads the Court to conclude that Thomas was not being truthful with the Court. Also, throughout the hearing, Thomas was unapologetic about his actions. His actions and approach to the hearing did not convey contrition; they conveyed defiance.

The Court outlined four sanctions that it was considering for Thomas: (1) a sanction of $250/day that Thomas did not comply with the Court's Order to file a corporate disclosure statement; (2) a requirement that Thomas provide a copy of the Court's final resolution of the Order to Show Cause and the hearing transcript to the disciplinary committee of every state bar and federal court to which Thomas is admitted; (3) a requirement that Thomas

provide a copy of the Court's final resolution of the Order to Show Cause and the hearing transcript to his clients in this case and obtain their written consent if he will continue as counsel in this case; and (4) a formal judicial reprimand. The Court gave Thomas an opportunity to respond to those proposed sanctions, which he did on March 19, 2020.

### B.    Thomas's History Of Sanctions Before Other Third Circuit Courts

Thomas has been here before. In fact, he has a long history of running afoul of courts in the Third Circuit. A review of that history is in order.

In *Bounasissi v. New York Life Ins. and Annuity Corp.*, Civ. A. No. 15-7585, 2016 WL 4697333 (D.N.J. Sept. 6, 2016), Thomas represented the plaintiffs. He filed an amended complaint and two motions for emergency injunctive relief. Thomas also tried to file a second amended complaint. Judge Simandle struck the second amended complaint because Thomas did not seek leave, and he denied the emergency motions because Thomas had not complied with procedural requirements. In granting a motion to dismiss, Judge Simandle explained that he "brought Plaintiffs' pleading deficiency to the parties' attention . . . yet Plaintiffs' counsel, Joshua Thomas, Esq., failed to even attempt to cure the deficiency. This is the third time Mr. Thomas has ignored his basic obligations under the Federal Rules of Civil Procedure in this case." *Id.* at * 1 n.2.

In *Akinsanmi v. Nationstar Mortgage*, Civ. A. No. 16-7732, 2017 WL 2960579 (D.N.J. May 25, 2017), Thomas represented the plaintiff. Judge Shipp noted that Thomas failed to "prosecute his case in a timely manner and fail[ed] to timely and adequately respond to the Court's orders." *Id.* at * 1. In particular, Thomas did not file a response to an Order to Show Cause, later sent a letter claiming he did not see the order and that he would comply. But he didn't comply. Judge Shipp then required Thomas to explain why the case should not be

dismissed involuntarily pursuant to Fed. R. Civ. P. 41(b), given the "history of delays and failures to comply with the Court's orders." *Id.* at * 2.

In *Hood v. Victoria Crossing Townhouse Ass'n*, Civ. A. No. 18-12259, 2019 WL 3336132 (D.N.J. July 25, 2019), Thomas represented the plaintiffs. His case was dismissed for lack of subject matter jurisdiction because it violated the *Rooker-Feldman* doctrine, the plaintiffs lacked standing, and the New Jersey entire-controversy doctrine barred the claim. Judge Kugler also found that Thomas "has repeatedly filed suits in this District and in the Eastern District of Pennsylvania that have been dismissed for lack of subject-matter jurisdiction . . .. The courts of the Third Circuit have cautioned him regarding his repeated disregard for court orders and Rules." *Id.* at * 9. Thus, the Court issued an Order to Show Cause why Thomas should not be enjoined from further filings in the District of New Jersey. After a hearing on the Order to Show Cause, Judge Kugler sanctioned Thomas by barring him from filing any new lawsuits in the District of New Jersey without prior leave of Court.

In *Wright v. JP Morgan Chase Bank, N.A.*, Civ. No. 18-8311, 2019 WL 5587262 (D.N.J. Oct. 30, 2019), Thomas represented the plaintiff. Judge Bumb dismissed the complaint because it asserted claims that were not cognizable and claims for which the Court had no subject matter jurisdiction for the same reasons as in the *Hood* case. The Court noted that the fifth complaint "forced Defendants and [the] Court to address frivolous issues that should have never been brought in the first instance." *Id.* at * 7. Judge Bumb concluded that Thomas "demonstrate[d] conduct that is not only irresponsible and inexcusable, but also sheds light on a careless attitude shown to the judicial system" and "fell short of [the] Court's expectations for professionalism and practice." *Id.* at * 7- * 8. Judge Bumb therefore issued a judicial reprimand and ordered Thomas to attend a continuing legal education program discussing the rules for professional conduct. She also

warned Thomas that "similar conduct in future cases will be met with even harsher discipline and sanctions." *Id.* at * 8.

Compounding his problems, Thomas missed the deadline that Judge Bumb set for him to take his CLE class. So, on February 6, 2020, Judge Bumb issued an Order to Show Cause why he failed to comply with the prior Order. In response, Thomas claimed that it was "exceedingly difficult" to find classes that satisfied the requirement imposed on him. Judge Bumb then issued an order noting that it was "inexplicable that Mr. Thomas waited until the ninety-day period had already expired" to raise this issue. (*Wright* ECF No. 36.) Therefore, Judge Bumb gave Thomas 10 more days to complete the required CLE.

In *Edwards v. Wells Fargo Bank, N.A.*, Civ. No. 19-14409 (D.N.J.), Thomas filed a complaint on behalf of the plaintiffs. One plaintiff wrote to the court to say that he knew nothing about the case and had never met Thomas. Judge Hillman issued an Order to Show Cause why Thomas should not be referred to the Chief Judge of the District of New Jersey for disciplinary action. (*Edwards* ECF No. 7.) That matter is scheduled for a hearing on April 7, 2020, before Judge Hillman.

In *In re Thomas,* 612 B.R. 46, 69 (Bankr. E.D. Pa. 2020), Thomas represented the debtor. He filed identical schedules on the Debtor's behalf as he had filed on her behalf in an earlier bankruptcy, without any effort to update the information. Judge Frank issued an Order to Show Cause why Thomas should not be held in contempt. At the hearing, Thomas suggested that the similarities between the schedules were the result of oversights. Judge Frank did not believe Thomas, though. Instead, he concluded that Thomas's actions were intentional. *See id.* at 65. Thomas also tried to blame his legal assistant for any errors. Judge Frank held that Thomas's conduct "must be characterized as a conscious disregard of his most basic duties as an attorney" and "evidence[d] a distinct lack of concern for the

integrity of the bankruptcy system." *Id.* at 67-68. Judge Frank also noted "Thomas's failure to fully appreciate the inadequacy of his conduct . . .." *Id.* at 69.

## LEGAL STANDARD

"Federal courts possess certain inherent powers, not conferred by rule of statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quote omitted). The underlying concern giving the Court such power is "disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." *Id.* at 44 (quote omitted).

Because a court's inherent powers are amorphous and potent, courts must exercise the powers "with restraint and discretion." *Id.* "The exercise of a court's inherent authority must satisfy two requirements: (1) it must be a reasonable response to the problems and needs confronting the court's fair administration of justice, and (2) it cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *United States v. Wright*, 913 F.3d 364, 371 (3d Cir. 2019). Although a court retains the inherent right to sanction when rules of court or statutes also provide a vehicle for sanctioning misconduct, resort to these inherent powers is not preferred when other remedies are available. *See In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002). That is, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists. *See Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995).

Courts should not impose sanctions in a manner that would discourage zealous advocacy. *See In re Orthopedic Bone Screw Products Liab. Litig.*, 193 F.3d 781, 795-96 (3d Cir. 1999). A court generally must find bad faith before imposing sanctions under its inherent powers. *See In re Prudential*, 278 F.3d at 181 & n. 4. Where there is a pattern of wrongdoing, stronger and more severe inherent sanctions are necessary. *See Rep. of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). This can include conduct in other cases. *See, e.g., Government Employees Ins. Co. v. Nealey*, 262 F. Supp.3d 153, 175 (E.D. Pa. 2017). A court should generally consider a wide range of alternative possible sanctions and choose a sanction that is the minimum that will serve to deter the undesirable behavior adequately. *See Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (discussions sanctions under Fed. R. Civ. P. 11).

## ANALYSIS

I.  **THOMAS ACTED IN BAD FAITH, MAKING SANCTIONS APPROPRIATE.**

The Court concludes that Thomas willfully disregarded this Court's Order that he file a Rule 7.1 disclosure statement and that he willfully disregarded the deadline to respond to the Court's Order to Show Cause. Indeed, when the Court pressed Thomas on the reason for his delay, he claimed that he was waiting on information from his client—a claim that the Court finds not to be credible. It is notable that Thomas did not attach to his response to the Court's Order to Show Cause any correspondence to back up his story that he was trying to get information from his client, even though the Court explained that the response was his opportunity to defend himself. Given Thomas's history of missed deadlines, the Court concludes that Thomas chose to disregard the deadlines that the Court had imposed, either because he thought they were not important or for some other reason.

Notably, Thomas does not make a meaningful argument to the contrary in his response to the Court's Order to Show Cause. He admits that he "could have, and likely should have," relied on the information in his possession to file a disclosure statement. (ECF No. 25 at 2.) He claims that the delay was not for a strategic purpose and did not bias Shelton or FVS, but that's beside the point. Parties are not free to disregard Court-ordered deadlines just because doing so will not affect the other parties.

One of the basic reasons that courts have the inherent power to issue sanctions is to ensure compliance with their orders. Here, if the Court did not sanction Thomas, that failure would imply that Thomas's conduct wasn't all that bad. It was all that bad, though, especially because it came at the tail end of Thomas's history of disregarding deadlines.

## II. SANCTIONS IMPOSED

Having determined that sanctions are appropriate, the Court must decide what sanctions to impose. In making that determination, the Court seeks the least significant sanction that will correct or deter similar conduct from Thomas in the future. The Court is mindful that this stems from Thomas's failure to file a Rule 7.1 disclosure statement, which some might see as a minor matter. It goes beyond that, though, because it is the culmination of a pattern of conduct and entails the willful disregard of several of the Court's orders. In addition, in fashioning its sanctions, the Court is mindful of Thomas's history of sanctions. The Court is not sanctioning Thomas for those past violations. However, the prior sanctions, and Thomas's failure to change his ways, demonstrate that harsher sanctions are necessary to make the point.

### A. Monetary Sanctions

Thomas's conduct did not impact Shelton or FVS because the Rule 7.1 disclosure statement was not for their benefit, it was for the Court. However, the Court is still of the

view that some monetary sanction is appropriate here. There is no doubt that the Court issued a valid order, Thomas had knowledge of it, and he disobeyed it. Under the circumstances, the Court can and in this case should impose a financial sanction. *See F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010).

The Court proposed a monetary sanction of $250/day for the time that Thomas was in violation of this Court's Order to file a disclosure statement, from February 3 until March 6. That is a total of 32 days, so the sanction would be $8,000. When imposing monetary sanctions, courts should take into account the party's financial resources. *See Doering*, 857 F.2d at 195-96. In his response, Thomas explains that he is a solo practitioner, and that a sanction of $8,000 would amount to between one- and two-months income.

The Court concludes that, under the circumstances, such a sanction would be too harsh. This would be true in any environment, and it is particularly true now, when so many practitioners face financial distress as a result of the COVID-19 pandemic. Accordingly, the Court will reduce the proposed sanction by 80%, to a sanction of $50/day, or a total of $1,600, to be paid into the Court's registry. The Court notes that the sanction is higher than the one Judge Frank imposed in *Thomas*. But Thomas's history tells the Court that prior, lower monetary sanctions have not resulted in better behavior.

### B. Disciplinary Reporting

Thomas's conduct in these cases calls into question his competence to practice law. At its most basic, the practice of law requires lawyers to respect and adhere to the rules and orders of the courts before which they appear. Thomas has not done that. What's more, he has failed to do it time and time again. Judge Bumb tried to help Thomas by sending him to a CLE on professionalism. But the class doesn't seem to have gotten through to him.

In his response to the Order to Show Cause, Thomas claims that the sanction is too broad and unduly burdensome and that it would impact his practice and because other disciplinary committees would not have jurisdiction to consider these issues. The Court disagrees. Those committees can decide for themselves whether Thomas's conduct warrants discipline. If so, then any time that Thomas must spend defending himself will be of his own making. Because Thomas's conduct calls into question his fitness to practice, the Court will order Thomas to send this Memorandum, the Order that will be issued simultaneously, and the transcript of the hearing on March 12 to the disciplinary committee for every state bar and every federal court to which Thomas is admitted. Thomas shall also provide a copy of this Memorandum, the Order, and the transcript to Judge Hillman as he considers whether to refer Thomas for disciplinary action. Thomas must provide the Court with a sworn statement and proof of delivery of these submissions.

### C. Client Reporting

Thomas's conduct in this case calls into question whether his clients would want him to continue as counsel in this case. In his response to the Court's Order to Show Cause, he claims that his clients are considering obtaining new counsel. However, no other counsel has appeared as of yet. In addition, Thomas says that any new counsel might be his co-counsel. Because the prospect of Thomas's continued involvement in the case remains, the Court believes it is important for Thomas's clients to have the information to make a fully-informed decision about whether to continue with Thomas as their counsel. Therefore, the Court will require Thomas to provide the material to his clients and to provide a sworn statement that he has done so. His clients must inform the Court in writing if they intend to proceed with Thomas as their lawyer.

### D. Reprimand

Though symbolic, the Court believes that a judicial reprimand is important here. In his response to the Order to Show Cause, Thomas asks the Court to reconsider and says that he has "previously stated an apology." (ECF No. 25 at 7.) Yet the Court found Thomas unapologetic at the hearing on March 12. Thomas also says that his failure to respond was not done intentionally. Again, the Court disagrees. Thomas willfully disregarded the deadlines. Such conduct warrants a reprimand.

## CONCLUSION

The Court recognizes that the sanctions it is imposing here are significant. Lighter sanctions do not seem to have made the point with Thomas, though. Thus, in the Court's view, these sanctions are the lightest sanctions that will convey to Thomas the seriousness of his conduct and therefore, hopefully, have the appropriate deterrent effect. The Court is aware that Thomas has other cases pending in the Eastern District of Pennsylvania. Hopefully, his conduct will improve. An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.