**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JACOVETTI LAW, P.C.
194 OLD COUNTRY ROAD
MINEOLTA, NY 11501,

ROBERT C. JACOVETTI
194 OLD COUNTRY ROAD
MINEOLTA, NY 11501,
     PLAINTIFFS,

       V.

JAMES EVERETT SHELTON
316 COVERED BRIDGE ROAD
KING OF PRUSSIA, PA 19406

AND

FINAL VERDICT SOLUTIONS
316 COVERED BRIDGE ROAD
KING OF PRUSSIA, PA 19406

AND

DAN BOGER
333 DEAN DRIVE
ROCKVILLE MARYLAND 20551

     DEFENDANTS.

CIVIL ACTION NO.: 2:20-cv-00163-JDW

*Civil Action*

## AMENDED COMPLAINT

Plaintiffs, JACOVETTI LAW, P.C. and ROBERT C. JACOVETTI, ("Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants, JAMES EVERETT SHELTON, (Shelton) and FINAL VERDICT SOLUTIONS and in support thereof, states as follows:

## I.    <u>Parties and Jurisdiction</u>

1. Plaintiff JACOVETTI LAW, P.C. is, a firm in the State of New York with a principle place of business located at 194 Old Country Road Mineolta, NY 11501.

2. Plaintiff ROBERT C. JACOVETTI is the principal of JACOVETTI LAW, P.C., PC with a principle place of business located at/within 194 Old Country Road Mineolta, NY 11501.

3. Defendant JAMES EVERETT SHELTON is of majority age residing in his home located at 316 Covered Bridge Road King of Prussia, PA 19406.

4. Defendant FINAL VERDICT SOLUTIONS is an entity run out of  JAMES EVERETT SHELTON's home located at 316 Covered Bridge Road King of Prussia, PA 19406.

5. Defendant DAN BOGER is of majority age residing in his home located at 333 Dean Drive Rockville, Maryland 20551.

6. Jurisdiction is based on 28 U.S. Code § 1332(a). The amount in controversy is in excess of $75,000.00;

7. Jurisdiction is also based on 28 U.S. Code § 1331 as the issue in controversy arising under the Constitution, laws, or treaties of the United States,

8. This Court has supplemental jurisdiction over Defendant pursuant to 28 U.S. Code § 1367 for all state claims.

9. At all times relevant and material hereto the named Defendant did act on its own individual behalf and as agents, servants, servicers, workmen and/or employees of each other, under each other's management, supervision, direction and control.

## II.   Background Material Facts

1.  Defendant Shelton runs a scheme and is a well known serial filer of carbon copy

    complaints, alleging TCPA (Telephone Consumer Protection Act) and other similar

    actions against various firms and forcing them into settlement based on materially

    misrepresented facts and/or entirely fabricated scenarios that Shelton alleges.

2.  Shelton then uses the firm that he runs out of his own home, Final Verdict Solutions, to

    essentially collect on the judgments that he forces upon these companies, in order to

    collect the settlement that was agreed to.

3.  Often times, Shelton will either hold himself out as an attorney or use two specific

    attorneys for his scheme, Bryan Anthony Reo (REO) of REO LAW LLC which only uses

    a business address of PO Box 5100 Mentor, Ohio 44061 and Clayton S. Morrow of

    Morrow & Artim, P.C. 304 Ross St., 7th Fl. Pittsburgh, PA 15219.

4.  At the time of filing, Shelton has 21 cases alone in the Eastern District of Pennsylvania

    that were filed and upon information and belief, 29 total around the country. [1]

5.  To perpetuate this scheme, Shelton will often induce companies to call him, then claim

    they called him improperly, sue and they will settle rather than fight a protracted battle.

---

[1] 2:08-cv-77863-ER SHELTON v. TYCO INTERNATIONAL (U.S.) INC. et al; 2:96-cv-03437-LB HAFFEY, et al v. SOFAMOR DANEK GROUP, et al; 2:16-cv-01650-PD SHELTON v. EXPERIAN INFORMATION SOLUTIONS, INC. et al;
2:17-cv-02367-JHS SHELTON v. MARK D. GUIDUBALDI & ASSOCIATES LLC et al; 2:17-cv-02368-LDD SHELTON v. DOAN SOLUTIONS, LLC et al; 2:17-cv-02620-TJS SHELTON v. ICAPITAL; CASH GROUP INC. et al; 2:17-cv-02851-GJP SHELTON v. MERCHANT SOURCE INC. ("MSI") et al; 2:17-cv-03301-RBS SHELTON v. FUNDBOX, INC.; 2:17-cv-04063-RBS SHELTON v. NATIONAL; GAS & ELECTRIC, LLC; 2:18-cv-01655-MAK SHELTON v. CENTERPOINTE LENDING STUDENT LOAN SERVICES et al; 2:18-cv-02070-NIQA SHELTON v. TARGET ADVANCE LLC; 2:18-cv-02071-CFK SHELTON v. FAST ADVANCE FUNDING, LLC; 2:18-cv-02072-TJS SHELTON v. PARAMOUNT HOLDING COMPANY, LLC; 2:18-cv-02186-TJS SHELTON v. CAPITAL; ADVANCES LLC et al; 2:18-cv-02187-CFK SHELTON v. ARETE FINANCIAL; GROUP et al; 2:18-cv-02259-PBT SHELTON v. RFR CAPITAL; LLC et al; 2:18-cv-02545-MSG SHELTON v. NATIONAL; STUDENT ASSIST LLC et al; 2:18-cv-02759-GEKP SHELTON v. IVEST 360, LLC; 2:18-cv-03723-JDW SHELTON v. FCS CAPITAL; LLC et al; 5:19-cv-02466-JFL SHELTON v. TRIFECTA SOLAR LLC et al; and 2:18-cv-04375-CFK SHELTON et al v. DIRECT ENERGY, LP, et al .

6. One of the more recent cases is against the Plaintiffs in this matter SHELTON v. FCS CAPITAL LLC et al at 2:18-cv-03723-JDW.

7. In that case, the original complaint was filed on August 30, 2018.

8. An amended complaint was then filed on November 13, 2018, and included Plaintiffs Jacovetti Law, P.C. and Robert C. Jacovetti.

9. A Safe harbor letter was sent informing Shelton of these bad acts. (See Exhibit A [incorporated from prior pleading]).

10. In fact, he attempted to get a default against these parties, however, once a motion to vacate said default was filed, he withdrew the case against Jacovetti Law, P.C. and Robert C. Jacovetti on February 6, 2019.

11. This was not before he and his attorneys threatened Jacovetti and his firm several times, with emails and phone calls and potentially defaming Mr. Jacovetti and his firm with the suit itself, as well as all other Plaintiffs.

12. At that time, Shelton's attorneys, Reo and Morrow both entered the case.

13. The problem with this case, is that it was setup for the sole purpose of extracting as settlement, based on false pretenses.

14. Substantially all of the "facts" alleged by Shelton are either palpable incorrect, or misstated to intentionally be misleading.

15. First, the T-mobile usage screenshot and also the email that Shelton received did not come from any of the Plaintiffs, rather it came from an entity known as "Fast Advance" at the time in question.

16. Shelton sent information to Plaintiff Robert C. Jacovetti as "evidence" in that case. (See Exhibits B and C – T-mobile usage screenshot and email to Shelton [incorporated from

prior pleading]).

17. Additionally, Shelton contacted Plaintiff Robert C. Jacovetti via the phone as well.

18. Further, Business Debt Experts and Business Debt Relief, LLC are not actual companies nor are they actual D/B/A's and as such, all facts alleged by Shelton in this regard are simply not accurate or have any relation with reality.

19. Michael Deangelis was an employee of Fast Advance Funding (FAF) during the time that Shelton is alleging.

20. In fact, Shelton even mentions this in his Complaint, yet still continues to reference the improper parties.

21. Mr. Deangelis was calling from his personal cell phone which none of the parties in this case have an authority over.

22. Further, Mr. Deangelis was sending emails from FAF after May 1st and therefore he could not be working for any Plaintiffs because the emails would have been sent from a Plaintiff entity, which they were not.

23. While the phone number 347-707-7942 is a number owned by FCS Capital LLC, the number could have been spoofed by Michael Deanglis in order to get back at the Plaintiffs for firing him.

24. Further, the application that Deanglis sent Shelton from his "FAF" email with Plaintiff's letter head was once again something that could have been done for "revenge" and the documents were something Deanglis had from his time working with Plaintiff before the time in question.

25. Further, paragraph 62 on page 14 of the complaint is a phone number that is owned by Plaintiff but that was not Deanglis' old number.

26. Further, on page 19, paragraph 110 on the Complaint, pursuant to internal call records, that number did not make the alleged call at that time.

27. On paragraph 71 on page 15 of the complaint, where calls are alleged, an internal review of the phone records show those calls did not happen at that time.

28. Further, the alleged number does not do text messaging, auto dialer or touch 1 calls, so these assertions are not accurate.

29. Additionally, Shelton claims that Anthony Diaz called him several times from May through August.

30. However, during this time, Shelton engaged in conversation with Anthony and expressed interest in Plaintiff's service, that is why Anthony kept calling him to follow up on previous conversations.

31. In Shelton's call log on 10/17/2018 a text was allegedly sent  from a number ending in 3787.

32. Plaintiffs have reviewed all activity for that extension for that day.

33. It was two calls that came in; nothing going out and that number does not, in fact, send texts.

34.  Further, Shelton says that Terrell called him multiple times and yet again, the phone records do not match this.

35. Finally, it is clear these actions are all being brought for the same purpose by Shelton and his attorneys and has been doing so for some time.

36. However, Shelton continues to try and pursue this case improperly against the remaining Defendants.

37. Defendant Dan Boger has often assisted Shelton in these matters, communicated directly

with Plaintiffs, and is incorporated by reference in the aforementioned actions.

38. One such communication is attached. (See Exhibit D – Boger email).

39. That email is almost word for word the exact same type of threat made by Mr. Shelton, either directly or through his counsel, and as such, is part of the evidence to show they are colluding.

40. Further, Plaintiffs now have evidence of Shelton discussing his scheme and planning it with others. (See Exhibit E – Transcripts).

41. In these calls, Defendant Shelton clearly is discussing his scheme, and how his entire enterprise works.

42. Specifically, he states things such as "I know other person's banks before I even file the case. I know how much money they have. Pillaging them that's the point" and "We're absolutely pillaging them." (see Exhibit E page 5, lines 4-6, 10-11).

43. He even admits what his scheme is: "I don't get out of bed for $500. But basically, what I'll do is I'll hit them up for - if it's a robo call or an ATDS call, I'll hit them up for $1,500 for 227(b), if they call me  more than twice, and if they call me two times or more, that's a violation of 227(c), because my number's on the do not call list." (See Exhibit E page 2, lines 7-13).

44. Then he further details finding others to perpetuate the scheme, "And you know, basically I'll be like, hey, have you got any calls from these guys? Yeah, I have. You know, they're on my list here somewhere. I mean, he gets way more calls than I do. So, and then, when I end up getting a  judgment against them or end up getting paid from them, I'll say, Craig, man, look, you should go - you should sue them. I mean, and so, he sues them. And now he's going to get paid." (see Exhibit E page 4, lines 6-14.).

45. While brief, these recordings get to the heart of what Defendant Shelton does, and then uses these methods to further include others.

46. This comports with Shelton's well-known plan to not only sue companies, but when he is done, to encourage others to do so as well.

47. It is believed that these recordings may be the first evidence, in all of the **many** cases, that Shelton has initiated, that show his pattern of practice in intentional.

48. In fact, there are now separate calls from a third party, that corroborates these calls, and these were learned of on April 22, 2020.

49. The transcripts are still in the process of being made, and unfortunately could not finalized because of the current crisis, as the third party, who shall currently be known as M.O., could not get the transcripts themselves made from the calls, as such Plaintiff reserves the right to supplement the pleadings later, once these transcripts are made.

50. Further, if requested, these recordings can be sent to Defendants' counsel as well for review.

51. After listening to these transcripts personally, Plaintiff's counsel states that some of the statements made by Mr. Shelton are that:

    a. *James Shelton: I understand. That's like I research these people a lot before I even write them a demand letter because I want to know okay, do they own real property? Do they have bank accounts? They have money. How big is their company how many employees do they have all that side research that stuff in advance. And if there are small if they're if they're driving a brand-new Mercedes or a or a Lambo or something whether living in a brand new house, then they can afford to pay me if there's someone living in their apartment has no money is*

driving a 1995 trucks.

b. "M.O: What? Okay, you find the company they call you. I mean are you then

going to go say hey Craig. ah Craig Cunningham or is other Rayburn whoever.

Hey [M.O.]. Here's an easy target.

James Shelton: Oh Yeah, absolutely, what we do is, not you in particular, what

will we do is say, hey you these guys just paid me x number of dollars or hey you

know I just collected a judgment against these I just say 20,000 dollars and yo,

any of you got any calls, yeah, sure have, let's go after them."

c. "James Shelton: Meanwhile, I know I know the person facts before I even. before

I even filed a case and how much many they have"

d. James Shelton: Here is the thing, here is the thing, like is, I sue the the people

individually and get individual the liability. So that's the first Hurdle the so even

close your company up, but I'm going but I'm going to have a judgment against

you personally and that's going that's going to mean that I can still level your

personal account. If you own you real property, I can put a lien against it or I can

even can take it if I want it if there's equity in it. I can take the house. I mean that

there's a

M.O: would you do that would you do that?

James Shelton: Yeah. We're in process of doing it to someone in Southern

California right now, but they are scumbags…

e. James Shelton: Know why I have to have Clear Choice credit for 10 bucks. You

can run a it's $9.50 each. You can run you can pull a credit report TransUnion or

Equifax. All you need to have a social date of birth address. It's very easy.

f.  *James Shelton: See look right. This is what I was doing. So I type in your name*
    *you live in Colorado Springs.*

    *[M.O.]: Yes.*

    *James Shelton: That's a super nice area. I've been there a few times I my dad is*
    *good friends with the guy that was in the Air Force. He's a colonel he's retired*
    *now, but uh, they were stationed on the US Air Force Base and so we went out*
    *there and said their place for a couple days and then we went skiing which was*
    *really really great really good time. So I'm somewhat familiar with the area. Yes.*
    *I would run you I would see the okay, you know. you have a house in Colorado*
    *Springs load him out 340,000. So then I would type in your property pull it up on*
    *sale. It's worth five hundred twelve thousand. So I'd be like, all right, that's a*
    *pretty nice house you have like a lot of people*

    *Michael O'Hare: But but James James i brought the house the house when i*
    *bought it was 340 it was worth 340 okay. It went up in the past three years*

    *James Shelton: That's gone go up and that gone get down when the market goes*
    *down*

    *[M.O.]: So I mean its but at you know my valid house come up for 100,000 for*
    *last 3 years its no because you know its more a luck then anything else you know*

g.  *[M.O.]: So that the lot of people wanted to do here*

h.  *James Shelton: You don't have any expensive vehicles so i would say your not*
    *rich by any means but if I had to judge it against you i mean 100% conclude*
    *against you and that would be sizable amount of equity that i could considerably*
    *take if its really worth that much but that just the so that would be my analysis*

*right. okay you own to six to seven year old cars. How much car you like to drive*
*you know that's the depending on the collectibilty i look at it as where someone*
*leaves and what they are driving and what there Benz car was that's the fact*
*someone that leaves in Calabasas or Bevery hills or Santa Ana California for*
*example*

*[M.O.]: Yeah, but you never know those people come on 1 sec*

52. Many of these statements seem to sync up with exactly what was stated in the prior transcripts, and clearly shows that Mr. Shelton intend to target individuals as part of his RICO scheme, send threats, and try and procure judgments against parties for trumped up or fabricated claims.

53. Further, the third party was able to list several of the numbers that Shelton uses to try and create these claims, including 6102650724, 4846263942, 3028846909, 4846745485 and 7167410205 and stated these number should be blocked.

54. Ultimately, Shelton attempted to sue this third party, but lost in Federal Court and ultimately withdrew his case in October of 2019.

55. The tactics in that case mirrored those in this case and Plaintiff reserves the right to incorporate that case, as needed, after discussing the matter further with this third party, M.O.

## COUNT ONE – ALL DEFENDANTS
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

1. Plaintiff hereby incorporate by reference all preceding paragraphs as if set forth at length herein.

2.   Further, there is an action for Racketeer Influenced and Corrupt Organizations Act (RICO), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968, because there was a "pattern of racketeering activity," which the statute defines as "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5); Tabas, 47 F.3d at 1290.

3.   At all times relevant and material hereto the Defendants did use electronic transmission, including fax, internet, in order to engage in deceptive and fraudulent practices, to wit: the deceptive, fraudulent and unlawful taking, theft and attempted conversion of Plaintiff's property – all of which is in violation of 18 U.S. Code § 1343.

4.   Further, there is an action for Racketeer Influenced and Corrupt Organizations Act (RICO), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968, because there was a "pattern of racketeering activity," which the statute defines as "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5); Tabas, 47 F.3d at 1290.

5.   Defendants have established a 'pattern of activity', by an 'enterprise', which has committed 'predicate acts', those acts never occurring more than ten years apart from the previous act(s).

6.   The RICO statute is intended to address repeat, rather than one-shot, criminal activity.

7.   For this reason, "the heart of any RICO complaint is the allegation of a pattern of racketeering." *See Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 154 (1987).

*8.*   The RICO statute also proscribes activities involving the "collection of an unlawful debt" as a separate basis for a RICO claim. *See 18 U.S.C. § 1962(a)-(c).*

9.     Wary of seeing "garden variety" fraud cases dressed up as federal claims, federal courts have used the "pattern" element as a means "to trim off the excesses of a civil RICO claim." *See United States v. O'Connor*, 910 F.2d 1466, 1468 (7th Cir. 1990).

10.    Federal courts have revealed some difficulty articulating exactly what type of proof is sufficient to meet the "pattern" element. *See U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1266 (7th Cir. 1990) *("[A] definition for precisely what activity will constitute a 'pattern' for purposes of the RICO statute has eluded the federal courts.").*

11.    Nonetheless, the aforementioned facts support this claim in this action.

12.    In fact, the continued pursuit by Defendants clearly illustrates that the actions are still ongoing, to this day.

**WHEREFORE,** the Plaintiff demand judgment against all Defendants, individually, jointly and severally for damages, interests and costs of suit including:

    a.   Punitive and/or treble damages;

    b.   Damages as permitted by statute;

    c.   Counsel fees;

    d.   All other relief this Court deems necessary and just.

## COUNT TWO – SHELTON
### Wire Fraud

13.    Plaintiffs hereby incorporate by reference all preceding paragraphs as if set forth at length herein.

14.    At all times relevant and material hereto the Defendant did use electronic transmission, including fax, internet, in order to engage in deceptive and fraudulent practices, to wit: the

deceptive, fraudulent and unlawful filing of friviolous lawsuits, including the one against the Plaintiffs in this matter.

15.   Further, there is an action for Racketeer Influenced and Corrupt Organizations Act (RICO), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968, because there was a "pattern of racketeering activity," which the statute defines as "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5); Tabas, 47 F.3d at 1290.

16.   There is no question Shelton, his collection firm, and his attorneys, file these frivolous suits for the sole purpose of extracting finds from companies.

17.   As was previously stated, they have filed dozens of these cases, and continue to do so across the country.

18.   There is no reason why this process should be permitted to continue.

**WHEREFORE,** the Plaintiff demand judgment against all Defendant, individually, jointly and severally for damages, interests and costs of suit including:

> e.   Punitive and/or treble damages;
>
> f.   Damages as permitted by statute;
>
> g.   Counsel fees;
>
> h.   All other relief this Court deems necessary and just.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that this Court enter judgment in their favor and against Defendant, as follows:

> a.   Awarding Plaintiff actual damages against Defendant;
> b.   Awarding Plaintiff damages for emotional distress against Defendant;
> c.   Awarding Plaintiff attorneys' fees and costs against Defendant;
> d.   Imposing any other appropriate monetary sanctions against Defendant; and

e.      Any other relief that this Court deems just and proper.

Dated: 5/4/2020                                        ____/s/ Joshua Thomas_____

                                                      Joshua Thomas, Esquire
                                                      Joshua L. Thomas & Associates
                                                      225 Wilmington-West Chester Pike
                                                      Suite 200
                                                      Chadds Ford, PA 19317
                                                      Attorney for Plaintiff

# EXHIBIT D

---------- Forwarded message ---------
From: **Dan Boger** <danboger@gmail.com>
Date: Thu, Nov 29, 2018 at 11:27 AM
Subject: Settlement Offer
To: <rcjesq@jacovettilaw.com>, <robert@newyorkdebtlawyer.com>

Mr. Jacovetti,

It's been a few weeks since we last communicated. After careful review of my emails, recordings, call notes and other documentation, it is clear that you have not been telling the truth and have not been operating in good faith during our conversations.

You stated that you had no relationship with Business Debt Experts. You also stated that there is no relationship between FCS Capital LLC and Business Debt Experts. Neither of these statements are true, you know they're not true, and I have documentation that proves that you know they're not true.

As a result of your actions, I will no longer be providing to you any additional evidence. If you seek additional evidence or information, you will have the opportunity to obtain that information via discovery after I've filed a formal claim. Since at least some of your statements are known to be untrue, I can no longer take you at your word for any statements or refutations of liability that you have made.

I am no longer interested in continuing to set aside time for any phone calls with you. If you wish to take the opportunity to explain your actions and your involvement with FCS Capital / Business Debt Experts, I will consider what you have to say - via email only. However, please cease and desist from any continued calls my cellular phone number, (703) 328-8842, both from FCS Capital (d/b/a Business Debt Experts) and from you and your office.

To be clear, these are my amended and current allegations of violations of the TCPA and the Maryland TCPA. This may be further amended to include additional violations, as my investigation continues to find those violations. All calls and text messages were to my cell phone number at (703) 328-8842.

- March 23, 2018 - A telemarketing call to my cell phone (DeAngelis). I demanded that the caller place my number onto your Do Not Call list.
- May 17th, 2018 - Another telemarketing call to my cell phone (DeAngelis), using an automated telephone dialing system. He said he was calling from Business Debt Experts. I again demanded that he place my phone number onto your Do Not Call list. This is violation #1.
- June 26th, 2018 - Two telemarketing calls from Business Debt Experts to my cell phone, using an automated telephone dialing system. These are violations #2 and #3.
- July 23rd, 2018 - Two telemarketing calls from Business Debt Experts to my cell phone, using an automated telephone dialing system. These are violations #4 and #5.
- October 25th, 2018 - One telemarketing text message using an automated telephone dialing system, one text message (Ana) likely manually dialed, and two telemarketing calls (Ana and Adam) likely manually dialed. These are violations #6, #7, #8, and #9.
- October 29th, 2018 - One telemarketing text message using an automated telephone dialing system and one telemarketing phone call (Grace) likely manually dialed. These are violations #10 and #11.

It is illegal to make these calls and texts without first obtaining the express consent of the recipient. Your conduct is a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; Federal Communications Commission, § 47 CFR 64.1200; and the Maryland Telephone Consumer Protection Act ("Maryland TCPA"), Md. Code Ann. Com. Law §§ 14-3201, et seq.

All of these calls were received in Maryland. In Maryland, a plaintiff is allowed to sue under both the Federal TCPA and the Maryland TCPA, allowing for double damages and attorneys fees. To date, there are 11 violations, 7 of which used an automated telephone dialing system. Each violation carries a statutory penalty of up to $1,500 per § 227(b) for the use of an automated telephone dialing system; an additional statutory penalty of up to $1,500 for the

FCC § 47 CFR 64.1200, per § 227(c); and up to $500 for the Maryland TCPA, meaning that there is a **$32,500** potential liability for you, your business and your client, plus attorneys fees, for these calls and text messages that I never should have received.

For full settlement of my claims against you, your business and your client, I will settle this matter for **$15,000**. This offer is a courtesy, with it being the same offer I previously provided, but I am no longer willing to entertain any counter offers. This offer expires on **Friday, December 7th, 2018**. If we are unable to resolve this matter prior to filing, I intend to seek the statutory maximum penalty, plus attorneys fees, through a TCPA lawsuit against you, your law firm, and FCS Capital LLC.

Additionally, please immediately provide me with a copy of your Do-Not-Call policy, as required by the Telephone Consumer Protection Act ("TCPA"), 47 C.F.R. § 64.1200(d).

Notwithstanding any of the foregoing, I intend to refer your conduct to the New York State Bar Association.

Dan Boger

# EXHIBIT E

Page 1

```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11    JAMES EVERETTE SHELTON

12

13    Won't sue for $500 per call too low 1m-JS1.wav

14    Collusion&Targeting Full 2m-JS1.wav

15    I know the persons bank account 9s JS-2 8.35.wav

16    Pillaging them that's the point 7s JS-1 45.30.wav

17

18

19

20

21

22

23

24

25
```

1 Won't sue for $500 per call too low 1m-JS1.wav

2       MAN 1:  Well, because understand what I
3 do is -- and by the way, I don't settle for
4 anywhere near $500 a call.  I mean, that's
5 territory that I wouldn't even touch.  That's way
6 too low.

7       I don't get out of bed for $500.  But
8 basically, what I'll do is I'll hit them up for -
9 - if it's a robo call or an ATDS call, I'll hit
10 them up for $1,500 for 227(b), if they call me
11 more than twice, and if they call me two times or
12 more, that's a violation of 227(c), because my
13 number's on the do not call list.

14       MAN 2:  Okay.

15       MAN 1:  And then, what I'll do -- so
16 that's $3,000 then.  And if I'm smart, I'll ask
17 them -- I -- what I usually do, I usually send
18 them what's called consent letters.  Are you
19 familiar with that, what a consent letter is?

20       MAN 2:  Yes.  So --

21       MAN 1:  Okay, so you know what it looks
22 like, hey, you know, provide evidence of consent?

23       MAN 2:  Yes, like a (indiscernible)
24 out.

25       MAN 1:  Yeah, or --

1 Collusion&Targeting Full 2m-JS1.wav

2       MAN 1:  What -- okay, you find a
3 company, they call you.  I mean, are you then
4 going to go say hey, Craig, Craig Cunningham or
5 these other -- Rayburn or whoever, hey, Michael
6 here is an easy target?

7       MAN 2:  Hell yeah. (Laughs)  That's the
8 -- well, absolutely because what we do is --
9 well, not you in particular, but like, what we'll
10 do is we'll say hey, yeah, you guys just paid me
11 X number of dollars, or hey, you know, I just
12 collected a judgment against these guys.  I just
13 made $20,000.

14       Yo, any of you guys got any calls?
15 Yeah, I sure have.  Let's go after them.  I mean,
16 absolutely.  I'm not gonna --

17       MAN 1:  But how would you go after
18 them?  But I don't understand how you'd go after
19 them, because they have to -- they can't initiate
20 the calls.

21       MAN 2:  No, the other people that have
22 gotten the calls.  Like let's say Craig
23 Cunningham --

24       MAN 1:  Yeah?

25       MAN 2:  -- got called from them.

1 Craig, so Craig and I had known about Greenstar
2 Capital since, I mean, they called me in like
3 February -- no, September 2017.  And
4 understanding that Craig and I talk like, almost
5 every day.  I mean, we talk a lot.

6       And you know, basically I'll be like,
7 hey, have you got any calls from these guys?
8 Yeah, I have.  You know, they're on my list here
9 somewhere.  I mean, he gets way more calls than I
10 do.  So, and then, when I end up getting a
11 judgment against them or end up getting paid from
12 them, I'll say, Craig, man, look, you should go -
13 - you should sue them.  I mean, and so, he sues
14 them.  And now he's going to get paid.

15       MAN 1:  But, so, but how does he --

16       MAN 2:  (indiscernible) --

17       MAN 1:  -- but what if they haven't
18 called him ever?

19       MAN 2:  Well, no, they have called him.

20       MAN 1:  Ah.

21       MAN 2:  I mean, I'm not saying -- he
22 doesn't just make this up and be like, oh, yeah,
23 this company called me, let me just file a
24 complaint, you know, I don't know.  Obviously, he
25 has been called and knows them.

1       MAN 1:  But what would put --
2 I know the persons bank account 9s JS-2 8.35.wav

3       MAN 1:  And meanwhile, I know, I know
4 other person's banks before I even file the case.
5 I know how much money they have.
6 Pillaging them that's the point 7s JS-1 45.30.wav

7       MAN 1:  How do you justify that
8 (indiscernible) --?

9       MAN 2:  No, no, you're right.  No,
10 we're pillaging them, no.  We're absolutely
11 pillaging them.  I mean, that's the -- that's the
12 point.

13

14

15

16

17

18

19

20

21

22

23

24

25

2 (Pages 2 - 5)

Page 6

1          C E R T I F I C A T I O N
2
3  I, Sonya Ledanski Hyde, certify that the
4  foregoing transcript is a true and accurate
5  record of the proceedings.
6
7
8
9  _____
10
11  Veritext Legal Solutions
12  330 Old Country Road
13  Suite 300
14  Mineola, NY 11501
15
16  Date: February 19, 2020
17
18
19
20
21
22
23
24
25

3 (Page 6)

**[1 - money]**                                                                                 Page 1

| | | | |
|---|---|---|---|
| **1** | **ah** 4:20 | **e** | **i'm** 2:16 3:16 4:21 |

**1**

**1** 1:16 2:2,15,21,25
  3:2,17,24 4:15,17
  4:20 5:1,3,6,7
**1,500** 2:10
**11501** 6:14
**19** 6:16
**1m** 1:13 2:1

**2**

**2** 1:15 2:14,20,23
  3:7,21,25 4:16,19
  4:21 5:2,9
**20,000** 3:13
**2017** 4:3
**2020** 6:16
**227** 2:10,12
**2m** 1:14 3:1

**3**

**3,000** 2:16
**300** 6:13
**330** 6:12

**4**

**45.30.wav** 1:16 5:6

**5**

**500** 1:13 2:1,4,7

**7**

**7s** 1:16 5:6

**8**

**8.35.wav** 1:15 5:2

**9**

**9s** 1:15 5:2

**a**

**absolutely** 3:8,16
  5:10
**account** 1:15 5:2
**accurate** 6:4

**ah** 4:20
**atds** 2:9

**b**

**b** 2:10
**bank** 1:15 5:2
**banks** 5:4
**basically** 2:8 4:6
**bed** 2:7

**c**

**c** 2:12 6:1,1
**call** 1:13 2:1,4,9,9
  2:10,11,13 3:3
**called** 2:18 3:25
  4:2,18,19,23,25
**calls** 3:14,20,22
  4:7,9
**can't** 3:19
**capital** 4:2
**case** 5:4
**certify** 6:3
**collected** 3:12
**collusion&targe...**
  1:14 3:1
**company** 3:3 4:23
**complaint** 4:24
**consent** 2:18,19,22
**country** 6:12
**craig** 3:4,4,22 4:1
  4:1,4,12
**cunningham** 3:4
  3:23

**d**

**date** 6:16
**day** 4:5
**doesn't** 4:22
**dollars** 3:11
**don't** 2:3,7 3:18
  4:24

**e**

**e** 6:1
**easy** 3:6
**everette** 1:11
**evidence** 2:22

**f**

**f** 6:1
**familiar** 2:19
**february** 4:3 6:16
**file** 4:23 5:4
**find** 3:2
**foregoing** 6:4
**full** 1:14 3:1

**g**

**getting** 4:10,11
**go** 3:4,15,17,18
  4:12
**going** 3:4 4:14
**gonna** 3:16
**gotten** 3:22
**greenstar** 4:1
**guys** 3:10,12,14
  4:7

**h**

**haven't** 4:17
**hell** 3:7
**hey** 2:22 3:4,5,10
  3:11 4:7
**he's** 4:14
**hit** 2:8,9
**hyde** 6:3

**i**

**indiscernible** 2:23
  4:16 5:8
**initiate** 3:19
**it's** 2:9
**i'll** 2:8,8,9,15,16
  4:6,12

**i'm** 2:16 3:16 4:21

**j**

**james** 1:11
**js** 1:15,16 5:2,6
**js1.wav** 1:13,14
  2:1 3:1
**judgment** 3:12
  4:11
**justify** 5:7

**k**

**know** 1:15 2:21,22
  3:11 4:6,8,24,24
  5:2,3,3,5
**known** 4:1
**knows** 4:25

**l**

**laughs** 3:7
**ledanski** 6:3
**legal** 6:11
**letter** 2:19
**letters** 2:18
**let's** 3:15,22
**list** 2:13 4:8
**look** 4:12
**looks** 2:21
**lot** 4:5
**low** 1:13 2:1,6

**m**

**man** 2:2,14,15,20
  2:21,23,25 3:2,7
  3:17,21,24,25 4:12
  4:15,16,17,19,20
  4:21 5:1,3,7,9
**mean** 2:4 3:3,15
  4:2,5,9,13,21 5:11
**michael** 3:5
**mineola** 6:14
**money** 5:5

| n | | |
|---|---|---|
| **n**  6:1 | | |
| **near**  2:4 | | |
| **number**  3:11 | | |
| **number's**  2:13 | | |
| **ny**  6:14 | | |

| o |
|---|
| **o**  6:1 |
| **obviously**  4:24 |
| **oh**  4:22 |
| **okay**  2:14,21 3:2 |
| **old**  6:12 |

| p |
|---|
| **paid**  3:10 4:11,14 |
| **particular**  3:9 |
| **people**  3:21 |
| **persons**  1:15 5:2 |
| **person's**  5:4 |
| **pillaging**  1:16 5:6 |
| 5:10,11 |
| **point**  1:16 5:6,12 |
| **proceedings**  6:5 |
| **provide**  2:22 |
| **put**  5:1 |

| r |
|---|
| **r**  6:1 |
| **rayburn**  3:5 |
| **record**  6:5 |
| **right**  5:9 |
| **road**  6:12 |
| **robo**  2:9 |

| s |
|---|
| **saying**  4:21 |
| **send**  2:17 |
| **september**  4:3 |
| **settle**  2:3 |
| **shelton**  1:11 |
| **smart**  2:16 |

**solutions**  6:11
**sonya**  6:3
**sue**  1:13 2:1 4:13
**sues**  4:13
**suite**  6:13
**sure**  3:15

| t |
|---|
| **t**  6:1,1 |
| **talk**  4:4,5 |
| **target**  3:6 |
| **territory**  2:5 |
| **that's**  1:16 2:4,5 |
| 2:12,16 3:7 5:6,11 |
| 5:11 |
| **they're**  4:8 |
| **times**  2:11 |
| **touch**  2:5 |
| **transcript**  6:4 |
| **true**  6:4 |
| **twice**  2:11 |
| **two**  2:11 |

| u |
|---|
| **understand**  2:2 |
| 3:18 |
| **understanding**  4:4 |
| **usually**  2:17,17 |

| v |
|---|
| **veritext**  6:11 |
| **violation**  2:12 |

| w |
|---|
| **way**  2:3,5 4:9 |
| **we'll**  3:9,10 |
| **we're**  5:10,10 |
| **what's**  2:18 |
| **won't**  1:13 2:1 |
| **wouldn't**  2:5 |

| x | |
|---|---|
| **x**  3:11 | |

| y |
|---|
| **yeah**  2:25 3:7,10 |
| 3:15,24 4:8,22 |
| **yo**  3:14 |
| **you'd**  3:18 |
| **you're**  5:9 |