**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JACOVETTI LAW, P.C., ET AT.,** | Case No. 2:20-cv-00163-JDW |
| Plaintiffs, | Hon. Joshua D. Wolson |
| v. | |
| **JAMES EVERETT SHELTON, ET AL.,** | |
| Defendants. | |

<u>**DEFENDANTS JAMES EVERETT SHELTON'S AND FINAL VERDICT SOLUTIONS'**</u>
<u>**MOTION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 12(B)(6)**</u>

**(ORAL ARGUMENT NOT REQUESTED)**

NOW COMES James Everett Shelton ("Shelton") and Final Verdict Solutions ("FVS") (Shelton and FVS collectively "Defendants"[1]), and hereby propound upon Jacovetti Law, P.C. ("JL") and Robert C. Jacovetti ("Jacovetti") (JL and Jacovetti collectively "Plaintiffs") and this Honorable Court Defendants James Everett Shelton's and Final Verdict Solutions' Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6):

1. For the reasons set forth in Defendants James Everett Shelton's and Final Verdict Solutions' Brief in Support of their Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants are entitled to the dismissal of the claims set forth in Plaintiffs' Amended Complaint (ECF No. 36) on the basis that the judicial proceedings privilege (a/k/a litigation privilege and the judicial privilege) immunizes Defendants from liability.  Furthermore, Defendants are entitled to dismissal of Plaintiffs' claims insofar as Plaintiffs have not alleged that Defendants engaged in

---

[1] The term "Defendants" for purposes of this Answer does not include Dan Boger, a co-defendant who is not represented by the undersigned attorney.

racketeering with third-parties in a manner which is proscribed by the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.

WHEREFORE, Defendants pray that this Honorable Court will dismiss Plaintiffs' claims

against Defendants.

Respectfully submitted,

**REO LAW, LLC**

/s/ Bryan A. Reo
Bryan A. Reo, Esq.
P.O. Box 5100
Mentor, OH 44061
(T):  (216) 505-0811
(E):  reo@reolaw.org
*Attorney for James Everett Shelton and Final*
*Verdict Solutions*

Dated:  May 21, 2020

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JACOVETTI LAW, P.C., ET AT.,** | Case No. 2:20-cv-00163-JDW |
| Plaintiffs, | Hon. Joshua D. Wolson |
| v. | |
| **JAMES EVERETT SHELTON, ET AL.,** | |
| Defendants. | |

**DEFENDANTS JAMES EVERETT SHELTON'S AND FINAL VERDICT SOLUTIONS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

# TABLE OF CONTENTS

I. TABLE OF AUTHORITIES ................................................................................. 2

II. ISSUES PRESENTED ...................................................................................... 5

III. STATEMENT OF FACTS ................................................................................ 6

IV. LAW & ARGUMENT ....................................................................................... 7

   A. DEFENDANTS ARE ENTITLED TO DISMISSAL OF PLAINTIFFS' CLAIMS
      PURSUANT TO FED. R. CIV. P. 12(B)(6) ....................................................... 8

     1. STANDARD OF REVIEW ...................................................................... 8

     2. PRINCIPAL POINT OF ARUGMENT ..................................................... 9

       a. THE COMMON LAW JUDICIAL PROCEEDINGS PRIVILEGE
         BARS PLANTIFFS' CLAIMS ......................................................... 9

       b. DEFENDANTS ARE NOT ALLEGED BY PLAINTIFFS TO
         HAVE CONSPIRED WITH THIRD-PARTIES IN AN ILLEGAL
         MANNER—WHICH IS A NECESSARY ELEMENT FOR A
         RICO CLAIM ................................................................................ 14

     3. CONCLUSION .................................................................................... 19

V. PRAYER FOR RELIEF .................................................................................. 20

1

# I.  TABLE OF AUTHORITIES

**CASE LAW**

*Albrecht v. Treon*, 617 F.3d 890 (6th Cir. 2010) ...................................................................6

*American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ..........................15

*Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001) .......................................................6

*Ashcroft v. Iqbal*, 556 U.S 662 (2009)...............................................................................7-8, 15, 16

*Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) ......................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...............................................7, 15-16

*Binder v. Triangle Publ'ns, Inc.*, 275 A2d 53 (Pa. 1971) ......................................................8

*City of Pittsburgh v. West Penn Power Co.*, 147 F. 3d 256, 263 n. 13 (3rd Cir. 1998)…..15

*Clodgo by Clodgo v. Bowman*, 601 A.2d 342 (Pa. Super. Ct. 1992)..................................8

*Daddona v. Gaudio*, 156 F. Supp. 2d 153, 162 (D. Conn. 2000)…………………………9

*Davis v. Pickell*, 939 F.Supp.2d 771 (E.D. Mich. 2013) .....................................................15

*Day v. John Hopkins Health System Corporation*, 907 F.3d 766 (4th Cir. 2018).........10-12

*Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003)..................................13, 14

*Fowler v. UPMC Presbyterian Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009)……6-8

*Kim v. Kimm*, 884 F.3d 98 (2nd Cir. 2018).........................................................................13

*Luther v. Am. Nat'l Bank of Minn.*, 2012 WL 5471123, at *6 (D. Minn. Oct. 11, 2012)...9

*Milliner v. Enck*, 709 A.2d 417 (Pa. Super. Ct. 1998).........................................................9

*Mireee v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2 (1977)…………………………12-13

*Moses v. McWilliams*, 549 A.2d 950 (Pa. Super. Ct. 1988)..................................................8

*Papasan v. Allain*, 478 U.S. 265 (1986) ..............................................................................6

*Pawlowski v. Smorto*, 588 A.2d 36 (Pa. Super. Ct. 1991) ...................................................8

*Raney v. Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004) .................................................13

*Rao v. BP Products N. Am., Inc.*¸ 589 F.3d 389 (7th Cir. 2009) .........................................15

*Ray v. Spirit Airlines, Inc.*, 2016 WL 4578347 (11th Cir. Sept. 2, 2016)...............10, 14, 15

*Richmond v. McHale*, 35 A.3d 779 (P.A. Super. Ct. 2012) .................................................8

*Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F. 3d 515, 525 (5th Cir. 2016)………….. 13

*Total Benefits Planning Agency, Inc., v. Anthem Blue Cross & Blue Shield*, 552
     F.3d 430 (6th Cir. 2008) ....................................................................................6

*Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*,
     719 F.3d 849 (7th Cir. 2013) .........................................................................15

## STATUTORY AND CONSTITUTIONAL LAW

18 U.S.C. § 1961 ...................................................................................................4

18 U.S.C. § 1962 ...................................................................................................4

18 U.S.C. § 1962(d) ...........................................................................................11

18 U.S.C. § 1963 ...................................................................................................4

18 U.S.C. § 1964 ...................................................................................................4

18 U.S.C. § 1965 ...................................................................................................4

18 U.S.C. § 1966 ...................................................................................................4

18 U.S.C. § 1967 ...................................................................................................4

18 U.S.C. § 1968 ...................................................................................................4

47 U.S.C. § 227 .....................................................................................................4

54 Pa.C.S. § 301 ................................................................................................11

## COURT RULES

Fed. R. Civ. P. 12(b)(6) ...............................................................................5-6, 12-14

## MISCELLANEOUS AUTHORITIES

Nora F. Engstrom, *Retaliatory RICO and the Puzzle of Fraudulent Claiming*, 115 MICH. L. REV. 639, 696, (2017)……………………………………………………………………………9

## II.  ISSUES PRESENTED

1.  Whether James Everett Shelton ("Shelton") and Final Verdict Solutions ("FVS") (collectively "Defendants") are entitled to dismissal of the claims Jacovetti Law, P.C. ("JL") and Robert C. Jacovetti ("Jacovetti") (JL and Jacovetti collectively "Plaintiffs") allege against Defendants as set forth within Plaintiffs' Amended Complaint (ECF No. 36) pursuant to Fed. R. Civ. P. 12(b)(6) due to the common law judicial proceedings privilege[2] affording Defendants immunity and due to Plaintiffs failing to plead facts sufficient to allege that Defendants engaged in racketeering with third-parties to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").

        Plaintiffs' Presumed Answers:     No.

        Defendants' Answer:     Yes.

---

[2] This privilege is also known as the "litigation privilege" and the "judicial privilege."

### III.  STATEMENT OF FACTS

On May 4, 2020, Plaintiffs filed Plaintiffs' Amended Complaint (ECF No. 36) against Defendants.  Said Complaint alleges that Defendants are liable to Plaintiffs via RICO, because Defendants sue and/or threaten to sue people and companies which Defendants accuse of violating the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  (ECF No. 36, § 2, ¶¶ 1-55).  The allegations of fact contained within Plaintiffs' Amended Complaint (ECF No. 36) and Plaintiffs' RICO Case Statement (ECF No. 42) are incorporated by reference as if fully set forth herein.

Plaintiffs' alleged claims against Defendants, however, fail as a matter of law for two reasons:  (1) Final Verdict Solutions is merely a registered d/b/a of Shelton's—rather than a distinct legal entity—, and as such, Shelton is not alleged by Plaintiffs to have conspired with a third-party in an illegal manner—which is a necessary element for a RICO claim, (2) Defendants are not alleged by Plaintiffs to have conspired with any third-parties such as Defendant Dan Boger or anyone else in an illegal manner, and (3) Defendants conduct is absolutely privileged by right via the litigation privilege.[3]

Defendants now move for dismissal of Plaintiffs' claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

---

[3] It should be noted that the Court has not yet addressed whether the litigation privilege provides Defendants immunity.  (ECF No. 33, Page 3 of 6) ("Shelton does not argue about or analyze federal common law, let alone attempt to apply it to the RICO claims in the Amended Complaint.  The Court will not do so *sua sponte*.").

## IV.  LAW & ARGUMENT

### A.  DEFENDANTS ARE ENTITLED TO DISMISSAL OF PLAINTIFFS' CLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6)

#### 1.  STANDARD OF REVIEW

When a court considers a motion that invokes Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations contained therein as true, and draw all reasonable factual inferences in the plaintiff's favor. *Fowler v. UPMC Presbyterian Shadyside,* 578 F.3d 203, 210-211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)), also see *Total Benefits Planning Agency, Inc., v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "[C]ourts 'are not bound to accept as true a legal conclusion[4] couched as a factual allegation[5].'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; see also *Ashcroft v. Iqbal*, 556 U.S 662, 680-81 (2009); *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).  Courts are not required to conjure up unpleaded

---

[4] The assertion by Plaintiffs that Defendants have filed "meritless" litigation is indeed a legal conclusion and a conclusory statement as the Plaintiffs do not even point to one single case of Defendant Shelton's that they allege was adjudged meritless, deemed frivolous/vexatious, or where Defendant Shelton was sanctioned, or where Defendant Shelton even lost on the merits in the case. Rather Plaintiffs make a sweeping statement that all of Defendant Shelton's cases were "meritless" and they expect that this legal conclusion must be accepted. However, a statement of such a legal conclusion need to be accepted by this Court for the purposes of reviewing a 12(b)(6) motion. Plaintiffs do not articulate which of Defendant Shelton's allegedly frivolous/meritless cases serve as the basis for the predicate RICO offenses, rather Plaintiffs simply provided a list of a number of Defendant Shelton's previous cases, none of which were ever adjudged meritless or frivolous.

[5] The allegation that Shelton files meritless litigation is a legal conclusion couched as a factual allegation and this Court need not consider or construe as true that allegation.

allegations, nor accept unwarranted factual inferences.  See *Total Benefits Planning*, 552 F.3d at 434.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)).

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Presbyterian Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The court must then determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 556 U.S. at 679).

## 2.  PRINCIPAL POINT OF ARUGMENT

### a.  THE COMMON LAW JUDICIAL PROCEEDINGS PRIVILEGE BARS PLANTIFFS' CLAIMS

Plaintiffs' claims against Defendants are meritless pursuant to the common law litigation privilege.  There are essentially two RICO claims in Plaintiff's Amended Complaint:  RICO (conspiracy between tortfeasors) and RICO (wire fraud as the predicate offense).  The litigation privilege applies to both.

The judicial proceedings privilege applies to statements made in the "regular course of judicial proceedings" that are "pertinent and material" to the litigation.  *Moses v. McWilliams*, 549 A.2d 950, 956 (Pa. Super. Ct. 1988) (*en banc*).  This absolute judicial privilege extends to

protect statements made in judicial proceedings regardless of the tort claimed.  *Clodgo by*

*Clodgo v. Bowman*, 601 A.2d 342, 345 (Pa. Super. Ct. 1992).  Pennsylvania courts have

expanded the scope of the judicial proceedings privilege to apply to torts beyond just

defamation. *See Moses*, 549 A.2d at 957  ("While it is true that immunity from civil liability in

judicial proceedings has been applied most frequently in defamation actions, many courts,

including those in Pennsylvania, have extended the immunity from civil liability to other alleged

torts when they occur in connection with judicial proceedings.").

"The form of the cause of action is not relevant to application of the privilege; regardless

of the tort contained in the complaint, if the communication was made in connection with a

judicial proceeding [sic] and was material and relevant to it, the privilege applies." *Id*. at 345.

"[T]he privilege extends not only to communications made in open court, but also encompasses

pleadings and even less formal communications such as preliminary conferences and

correspondence between counsel in furtherance of the client's interest." *Richmond v. McHale*, 35

A.3d 779, 785 (P.A. Super. Ct. 2012) (quoting *Pawlowski v. Smorto*, 588 A.2d 36, 41-42 (Pa.

Super. Ct. 1991)).  "All communications pertinent to any stage of a judicial proceeding are

accorded an absolute privilege which cannot be destroyed by abuse." *Binder v. Triangle*

*Publ'ns, Inc.*, 275 A2d 53, 56 (Pa. 1971); see also *Milliner v. Enck*, 709 A.2d 417, 421 (Pa.

Super. Ct. 1998) ("[W]here statements are made in the course of judicial proceedings, it is clear

that such statements are absolutely privileged, and '[h]owever false and malicious, they are not

libelous.'").

In the instant case, Plaintiffs are essentially suing Defendants for Shelton having previously

sent pre-litigation settlement offers to Plaintiffs and other third-parties for what Shelton believes

to be TCPA violations, and when these pre-litigation settlement offers do not result in settlement,

Shelton thereafter sues said parties.  (ECF No. 36). Plaintiffs incorrectly allege that the sending of pre-suit settlement offers, engaging in pre-litigation discussion or investigation with the alleged TCPA violator(s), and/or the use of litigation can constitute a RICO violation.  (ECF No. 36).  This is incorrect because the sending of pre-suit settlement offers, pre-suit discussions about attempting to investigate the merits of the claim, and/or the use of litigation falls squarely within the scope of litigation—which is subject to the litigation privilege.

In *Day v. John Hopkins Health System Corporation*, 907 F.3d 766 (4th Cir. 2018), the United States Court of Appeals for the Fourth Circuit dealt with a case in which the "Witness Litigation Privilege"—which appears to be yet another term for the judicial proceedings privilege / judicial proceedings privilege / litigation privilege / judicial privilege—was deemed to apply to RICO claims brought forth in federal court.  Said the *Day* court in pertinent part:

> Our law affords absolute immunity to those persons who aid the truth-seeking mission of the judicial system. This protection extends to judges, prosecutors and witnesses. *See Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Imbler v. Pachtman,* 424 U.S. 409, 427, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Briscoe v. LaHue,* 460 U.S. 325, 330-34, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Immunity for witnesses-commonly known as the Witness Litigation Privilege-is a longstanding and necessary part of the common law's approach to adversarial adjudication. In fact, "the immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law." *See Briscoe*, 460 U.S. at 330-31, 103 S.Ct. 1108. When a witness takes the oath, submitting his own testimony to cross-examination, the common law does not allow his participation to be deterred or undermined by subsequent collateral actions for damages. The vital protection afforded all participants in litigation is unwavering. It is a bedrock of our law today just as it was centuries ago. *See Rehberg v. Paulk,* 566 U.S. 356, 363, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012); *Bradley v. Fisher,* 80 U.S. 13 Wall. 335, 346-47, 20 L.Ed. 646 (1871).
>
> The Witness Litigation Privilege is a broad one. It applies to those who come forward of their own volition as well as those who are compelled, *see Briscoe*, 460 U.S. at 333, 103 S.Ct. 1108; * * * and to those who act with malice or ill will as well as those who are simply mistaken in their recollections. * * * The Witness Litigation Privilege in other words is foundational to any system of adversary justice, and is therefore vital to both federal law and the law of the sovereign states.

\* \* \*

As with any other privilege or immunity, there will of course be questions about its scope. Litigants may fight about who counts as a witness or whether proceedings are sufficiently judicial in character. *See, e.g.*, *Franklin v. Terr,* 201 F.3d 1098, 1102 (9th Cir. 2000) (finding that witnesses who conspire to present perjured testimony are shielded by immunity)[.] \* \* \* Once the witnesses' actions fall within the scope of the immunity, however, its protection is absolute.

\* \* \*

The Witness Litigation Privilege is part of both federal common law and the state law of Maryland. The absolute immunity found in both bodies of law are coextensive. *Compare O'Brien & Gere Eng'rs v. City of Salisbury,* 447 Md. 394, 135 A.3d 473, 482 (2016) ("The litigation privilege dates back 500 years to the English Court of Queen's Bench. The privilege rests on the vital public policy of the free and unfettered administration of justice." (quotations omitted) ), *and* N*orman v. Borison,* 418 Md. 630, 17 A.3d 697, 708 (2011) ("For witnesses ... we employ the 'English' Rule, which provides that the putative tortfeasor enjoys absolute immunity from civil liability."), *with Briscoe,* 460 U.S. at 331, 103 S.Ct. 1108 ("[W]itnesses ha[ve] an absolute privilege ... from subsequent damages liability for their testimony in judicial proceedings.").

\* \* \*

Appellants' sole federal claim arises under the civil cause of action created by the Racketeer Influenced and Corrupt Organizations Act (RICO), Pub. L. No. 91-452, Title IX (1970) (codified at 18 U.S.C. § § 1961-1968 (2012) ). The Witness Litigation Privilege is a part of federal common law. Congress clearly has the power to displace common law protections by statute if it so desires. *See Pulliam v. Allen,* 466 U.S. 522, 529, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Federal courts, however, do not leave this question to ordinary interpretive parsing. Instead, common law immunities function as implied limits on congressional statutes, operative until they are expressly removed.

Congress frequently enacts statutes in harmony with the common law. Sometimes legislators borrow terms familiar to our common law tradition. *See, e.g.*, *Nationwide Mutual Ins. Co. v. Darden,* 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) ("Where Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms."). At other times Congress assumes that common law principles will inform the causes of action that it creates. *See, e.g.*, *Meyer v. Holley,* 537 U.S. 280, 286, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) (applying "ordinary background tort principles" to statutory cause of action under the Fair Housing Act). When

Congress seeks to displace a common law immunity, it therefore must do so in clear terms. Absent an indication of a contrary purpose, the courts "must presume that Congress intended to retain the substance of the common law." *Kirtsaeng v. John Wiley & Sons, Inc.,* 568 U.S. 519, 538, 133 S.Ct. 1351, 185 L.Ed.2d 392 (2013) (quoting *Samantar v. Yousuf,* 560 U.S. 305, 130 S.Ct. 2278, 2289-90, 176 L.Ed.2d 1047 (2010) ); *see also United States v. Texas,* 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993). *Cf. Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (requiring "unmistakably clear" language to abrogate state sovereign immunity).

* * *

RICO's civil cause of action manifests no intention to displace the Witness Litigation Privilege. In enacting RICO, Congress stated that "it is the purpose of this Act to seek the eradication of organized crime in the United States." Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 1. To further this purpose, RICO lists a range of prohibited "racketeering activities," 18 U.S.C. § 1961, and allows for both civil and criminal enforcement. *Id.* § § 1963, 1964. To bring a claim under the civil provision, a plaintiff must demonstrate that he is "injured in his business or property." *Id.* § 1964(c).

Rather than develop a new category of prohibited acts, RICO borrowed other provisions of the federal criminal law to define "racketeering activities." 18 U.S.C. § 1961(1). The statute cross-references various acts of witness tampering and obstruction of justice, but it does not include the criminal sanction for perjury, found at 18 U.S.C. § 1621. As the Second Circuit explained, "Congress did not wish to permit instances of federal or state court perjury as such to constitute a pattern of RICO racketeering activities, [demonstrating] an understandable reluctance to use federal criminal law as a back-stop for all state court litigation." *United States v. Eisen,* 974 F.2d 246, 254 (2d Cir. 1992). Moreover, the RICO statute makes no reference to witness testimony. This is not because the issue slipped Congress' mind. The statute providing witnesses with a general "use immunity" from federal criminal prosecutions was passed as Title II of the very same law that included RICO. *See* Pub. L. No. 91-452, Title II (1970).

Given the complete absence of direction on the subject of witness immunity, as well as the explicit decision to not include perjury within the definition of racketeering activities, we cannot conclude that RICO abrogated witness immunity.

*Day*, 907 F.3d at 771-773, 775-777.

Plaintiffs allege "Mr. Shelton intend[s] to target individuals as part of his RICO scheme,

send threats, and try and procure judgments against parties for trumped up or fabricated claims".

See Am. Compl. ¶52. The underlying litigation at issue in this matter, *Shelton v. FCS Capital*

*LLC*, No. 2:18-cv-03723, was not frivolous or fabricated, as Mr. Shelton won that matter on the merits, albeit not against the remaining Plaintiffs in this matter, who Shelton dismissed as defendants voluntarily prior to defendants filing a responsive pleading in order to streamline and simplify the proceedings. To the extent that Plaintiffs claim that Mr. Shelton sued for "fabricated claims", such conduct would not constitute an actionable RICO violation[6].

Courts around the country have found that the litigation privilege applies to RICO claims. In *Kim v. Kimm*, 884 F.3d 98 (2nd Cir. 2018), it was held that dismissal via Fed. R. Civ. P. 12(b)(6) of a RICO claim was correct pursuant to the litigation privilege when said RICO claim was based upon the alleged predicate act of fraudulent lawsuits allegedly having been filed by the defendant of the RICO civil action. As the Court in *Kim* held, there are compelling policy arguments supporting this rule. First, "[i]f litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action," which "would inundate the federal courts with procedurally complex RICO pleadings." *Kim* at 266-67; *see also* Nora F. Engstrom, *Retaliatory RICO and the Puzzle of Fraudulent Claiming*, 115 MICH. L. REV. 639, 696, (2017)(permitting RICO suits based on prior litigation activities would "engender wasteful satellite litigation"). See also *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087-88 (11th Cir. 2004) (deciding that the "alleged conspiracy to extort money through the filing of malicious lawsuits" were not predicate acts of extortion or mail fraud under RICO); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (deciding that meritless litigation[7] is not a predicate act of

---

[6] Mr. Shelton denies filing any frivolous, fabricated, or fraudulent litigation; he only brings litigation after conducting a thorough investigation into the claims, facts, and applicable law. Furthermore, no Court has ever found that Mr. Shelton has engaged in such conduct.

[7] Defendants Shelton and FVS wish this Court to note that they maintain the litigation they have participated in has always been meritorious and well-grounded in law and with factual support. Indeed Defendant Shelton has never lost a case on the merits and has either resolved all of his litigation via settlements or prevailed on the merits. None of Shelton's litigation has ever been

extortion under RICO), *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F. 3d 515, 525 (5th Cir. 2016)("[i]n the absence of corruption," such litigation activity "cannot act as a predicate offense for a civil-RICO claim."), *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 162 (D. Conn. 2000)(same); *Luther v. Am. Nat'l Bank of Minn.*, 2012 WL 5471123, at *6 (D. Minn. Oct. 11, 2012)(same).

In the instant case, Plaintiffs are suing Defendants for allegedly engaging in racketeering and wire fraud—as the predicate offense for the RICO claim. (ECF No. 36). However, these claims fail as a matter of law due to the litigation privilege because both claims are ultimately based upon Defendants allegedly filing frivolous lawsuits. (ECF No. 36, Count 2, ¶ 14) (Plaintiffs allege that the electronic transmissions used by Defendants is based upon the "filing of frivolous lawsuits"). See *Rayney*; *Deck*; *Kim*.

Due to the litigation privilege which provides Defendants absolute immunity, Plaintiffs' claims against Defendants are legally meritless and Defendants are entitled to dismissal of the same with prejudice.

### b. DEFENDANTS ARE NOT ALLEGED BY PLAINTIFFS TO HAVE CONSPIRED WITH THIRD-PARTIES IN AN ILLEGAL MANNER—WHICH IS A NECESSARY ELEMENT FOR A RICO CLAIM

In Plaintiffs' Amended Complaint, Plaintiffs allege that FVS is "an entity" used by Shelton to commit acts constituting actionable racketeering. (ECF No. 36, § I, ¶ 4). Plaintiffs, however, do not specify with allegations of fact as to what kind of entity Final Verdict Solutions ("FVS") constitutes, and this is deliberately by design: FVS is merely a registered fictitious name of Shelton—registered via the Fictitious Names Act, 54 Pa.C.S. §§ 301, *et seq.*—, and thus Shelton is still acting as a sole proprietor when acting under the FVS banner. *See* Exhibit "A", a true and

---

found frivolous or adjudicated on the merits in a manner adverse to Shelton. Even assuming, arguendo, any of his litigation was meritless [which Shelton disputes] meritless litigation cannot be a predicate act of extortion under RICO.

correct copy of FVS's Rule 7.1 Disclosure Statement, ECF No. 9, filed February 16, 2020. FVS was registered by Defendant James Shelton as a fictitious business name (commonly referred to as a "d/b/a/" or "doing business as") with the Pennsylvania Department of State on March 7, 2016. The Court may take judicial notice of Defendant's Rule 7.1 Disclosure Statement and the Fictitious Business Name registration filed with the PA Department of State attached thereto, as it is a matter of public record.

Plaintiffs are thus essentially accusing Shelton in a conclusory manner—see *Twombly* and *Iqbal*—of conspiring with himself throughout a portion of Plaintiffs' Amended Complaint, ¶¶6–36, and this does not satisfy the conspiracy element which is necessary for a RICO conspiracy claim.  See, e.g., *Davis v. Pickell*, 939 F.Supp.2d 771 (E.D. Mich. 2013) (under the intracorporate-conspiracy doctrine, a corporation cannot ordinarily conspire with its agents or employees insofar as one cannot as a matter of law conspire with oneself), *Ray v. Spirit Airlines, Inc.*, No. 15-13792, 2016 WL 4578347 (11th Cir. Sept. 2, 2016) (holding that a corporation cannot form an enterprise with its own agents).

To state a claim under 18 U.S.C. § 1962(d), the plaintiffs must allege the existence of "an agreement to participate in an endeavor which, if completed, would constitute a violation" of the RICO statute.  *Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013).  Allegations of parallel conduct that could just as easily suggest independent, legitimate action, accompanied by nothing more than conclusory assertions of conspiracy, are insufficient to state a RICO conspiracy claim.  *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) (citing *Twombly*); *Rao v. BP Products N. Am., Inc.*¸ 589 F.3d 389 (7th Cir. 2009) (affirming dismissal of RICO conspiracy claim that contained only boilerplate allegations of RICO conspiracy). The Court need not accept as true sweeping legal

15

conclusions cast in the form of a factual allegation. *Mireee v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2 (1977), *City of Pittsburgh v. West Penn Power Co.*, 147 F. 3d 256, 263 n. 13 (3rd Cir. 1998).

In the instant case, not only did Plaintiffs not meaningfully allege that Shelton conspired with FVS—because Plaintiffs did not allege as fact what kind of "entity" FVS constitutes and Plaintiffs did not allege that FVS is a separate and distinct legal entity from Shelton[8]—, but Plaintiffs also did not meaningfully allege facts sufficient to plead that Defendants engaged in racketeering with Dan Boger ("Boger") or any other third-party.  Specifically, Plaintiffs only allege that Defendants have "colluded" with Boger because Boger "has often assisted Shelton in these matters, [and] communicated directly with Plaintiffs" (ECF No. 36, § II, ¶¶ 37-39). However, the facts in the Amended Complaint indicate that Mr. Shelton and Mr. Boger were both merely pursuing their own individual TCPA claims against Plaintiffs, and both sought to recover damages in their own individual capacities from Plaintiffs (ECF No. 36, § II, ¶¶ 38-39, also see Exhibit D attached to Amended Complaint). As such, Plaintiffs did not plead in the manner required by *Twombly* and *Iqbal* that Defendants even engaged in racketeering.  Nothing Defendants are alleged to have done by Plaintiffs constitutes a RICO violation, much less a conspiracy to commit RICO violations.

Plaintiffs claim that Boger sent correspondence via email to Plaintiffs on November 29, 2018 [Exhibit D in Amended Complaint – Boger email]. The email was apparently sent as part of pre-litigation settlement discussions between Dan Boger, a resident of Rockville, Maryland, and Robert C. Jacovetti, Esquire, a New York attorney who is the principle of Jacovetti Law,

---

[8] Final Verdict Solutions is not a separate legal entity from Mr. Shelton, as previously discussed, it is a fictitious name owned and registered to Defendant James Shelton's individual name. Also see ECF No. 9, FVS's Rule 7.1 disclosure statement.

P.C.. The settlement discussions were prompted by Boger's alleged receipt of unwanted telephone solicitations to Boger's telephone number, (703) 328-8842, in violation of the TPCA and Maryland state law ("*All calls and text messages were to my cell phone number at (703) 328-8842.*"). The Boger email includes a monetary demand to settle Mr. Boger's claims, a request for a copy of Plaintiffs' Do-Not-Call policy, a request that Plaintiffs cease and desist contacting Boger's cellular telephone, and a threat of litigation if Mr. Boger's TCPA claims were not resolved.

The Boger email does not mention Mr. Shelton or Final Verdict Solutions, nor does it have anything to with Mr. Shelton's TCPA claims against Plaintiffs in *Shelton v. FCS Capital LLC*, No. 2:18-cv-03723. Mr. Boger was not seeking a settlement on Mr. Shelton's behalf or attempting to collect money based on Mr. Shelton's claims for himself – the e-mail was clear that Boger was seeking damages for himself in Mr. Boger's own individual capacity as a consumer who received illegal phone calls allegedly in violation of the TCPA. Plaintiffs claim that it is a RICO violation "to not only sue companies, but when he is done, to encourage others to do so as well." (ECF No. 36, § II, ¶¶ 46). Even if Plaintiffs allegations were true, it is not illegal in any way (nor could it constitute racketeering) for Mr. Shelton to encourage other consumers such as Mr. Boger to enforce their consumer rights in Court via TCPA litigation as a result of receipt of allegedly violative telephone calls. Such conduct is protected speech under the First Amendment. And, every citizen has the right to seek redress of their TCPA claims, either in Court or through pre-litigation settlement negotiations.

### **The Transcripts Attached to Plaintiff's Amended Complaint are Irrelevant**

The transcript of a conversation involving Shelton and an unrelated third-party who is not a party to this matter, "M.O." is factually and evidentiarily meaningless. It is said transcript

which Plaintiffs contend is some sort of smoking gun evincing that Shelton engaged in actionable misconduct of a RICO nature. In the purported "transcripts", Mr. Shelton discusses how he engages in informal pre-litigation investigation to determine whether Shelton's claims against tortfeasors are viable and to make sure that tortfeasors Shelton elects to pursue for violations of the TCPA are even collectible or otherwise have the means to satisfy a civil judgment. But Plaintiffs do not (nor can they) allege that these conversations or the content contained therein constitute an actionable RICO claim against Defendants.

Conducting research into whether or not a potential tort defendant is ultimately going to be collectible, prior to deciding whether or not it is prudent to litigate meritorious claims against that tortfeasor, is not evidence of bad faith or maliciousness on the part of the plaintiff seeking to litigate the claims; rather it is a component of a sound strategy and shows proper allocation of resources, time, money, and concern for the court's time. It makes little sense to obtain a judgment against a corporate defendant that is no longer in business, or in bankruptcy, or against individual defendants who are destitute, bankrupt, or otherwise have no assets capable of satisfying a judgment. Assuming for the sake of argument that Mr. Shelton does fairly extensive research into whether or not a potential defendant is ultimately going to be collectible, as long as claims have merit and a good-faith basis in fact and law, those claims are not suddenly transformed into frivolous or vexatious by mere virtue of the fact that Shelton asks himself, "what happens after I prevail and I am awarded a judgment, will I be able to collect on it?"

Plaintiffs' transcripts are not relevant and are not probative of any fact of consequence. That a TCPA litigant such as Shelton might be motivated in part by a desire to not only obtain a judgment to vindicate his rights, but to ultimately be able to collect on the judgment and recover the money damages awarded to him, has no bearing on the underlying merit of his TCPA claims

and it has no bearing on his standing as a litigant to proceed under the TCPA. And more importantly for the purposes of this action, it certainly does not constitute a RICO violation.

Finally, Mr. Shelton's alleged discussions with unrelated third-parties about TCPA litigation activity have no bearing on whether or not Plaintiffs have a viable claim. As previously discussed, it is not actionable for Mr. Shelton to encourage other third-parties to sue telemarketers under the TCPA or other laws. If such were the case, then the TCPA would be eviscerated, as consumers would be unable to flex their rights without fear of being sued for RICO.

### 3. CONCLUSION

For the reasons set forth herein, Defendants are entitled to dismissal of Plaintiffs' claims against Defendants pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice and without leave to amend (which would be futile).  Plaintiffs' claim does not plausibly allege facts—as required by *Twombly* and *Iqbal*—to suggest that Defendants engaged in racketeering with third-parties to commit illegal acts proscribed by RICO, and Defendants' conduct is privileged pursuant to the litigation privilege.

## V.  PRAYER FOR RELIEF

The Court should grant dismissal with prejudice to Defendants pursuant to Fed. R. Civ. P. 12(b)(6) in light of Defendants enjoying absolute immunity via the common law litigation privilege and due to Plaintiffs failing to allege that Defendants engaged in racketeering with a third-party in a manner which is proscribed by RICO.

Respectfully submitted,

**REO LAW, LLC**

/s/ Bryan A. Reo
Bryan A. Reo, Esq.
P.O. Box 5100
Mentor, OH 44061
(T):  (216) 505-0811
(E):  reo@reolaw.org
*Attorney for James Everett Shelton and Final Verdict Solutions*

Dated:  May 21, 2020

20

### <u>CERTIFICATE OF SERVICE</u>

I, Bryan A. Reo, affirm that I am an attorney of record for a party to the above-captioned civil action, and on May 21, 2020, I submitted Defendants James Everett Shelton's and Final Verdict Solutions' Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) and  Defendants James Everett Shelton's and Final Verdict Solutions' Brief in Support of their Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) to the Court's Electronic Filing System, which should provide notification to all attorneys of record that said filing has been submitted.

/s/ Bryan A. Reo_____
Bryan A. Reo, Esq.
P.O. Box 5100
Mentor, OH 44061
(T):  (216) 505-0811
(E):  reo@reolaw.org
*Attorney for James Everett Shelton and Final Verdict Solutions*

Dated:  May 21, 2020