IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOVETTI LAW, P.C. et al._<br>PLAINTIFFS,_<br><br>V.<br><br>JAMES EVERETT SHELTON, et al._<br>DEFENDANTS. | CIVIL ACTION NO.: 2:20-cv-00163-JDW<br><br>*Civil Action* |

**BRIEF IN IN OPPOSITION TO THE MOTION TO DISMISS**

In considering a motion to dismiss under Rule 12(b)(6), the court must first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). Then, the court determines whether the facts alleged, if proven, show that the plaintiff has a plausible claim for relief. *Id.* All well-pleaded allegations of the complaint must be accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences must be drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). None of the claims in the Complaint should not be dismissed.

The amended complaint responds to all alleged issues, specifically my removing the parties that the prior judgement was entered against, and only proceeding with the parties that have claims against defendants. Further, Plaintiffs now have evidence of Shelton discussing his scheme and planning it with others. (See Exhibit D of the Proposed Amended Complaint – First Transcripts incorporated by reference).

In these calls, Defendant Shelton clearly is discussing his scheme, and how his entire enterprise works. Specifically, he states things such as "I know other person's banks before I even file the case. I know how much money they have. Pillaging them that's the point" and "We're absolutely pillaging them." (see Exhibit D page 5, lines 4-6, 10-11). He even admits what his scheme is: "I don't get out of bed for $500. But basically, what I'll do is I'll hit them up for - if it's a robo call or an ATDS call, I'll hit them up for $1,500 for 227(b), if they call me more than twice, and if they call me two times or more, that's a violation of 227(c), because my number's on the do not call list." (See Exhibit D page 2, lines 7-13).

Then he further details finding others to perpetuate the scheme, "And you know, basically I'll be like, hey, have you got any calls from these guys? Yeah, I have. You know, they're on my list here somewhere. I mean, he gets way more calls than I do. So, and then, when I end up getting a judgment against them or end up getting paid from them, I'll say, Craig, man, look, you should go - you should sue them. I mean, and so, he sues them. And now he's going to get paid." (see Exhibit D page 4, lines 6-14.). While brief, these recordings get to the heart of what Defendant Shelton does, and then uses these methods to further include others.

Further, there are new transcripts were recently received and clearly shows that Defendant has no problem pursuing not only his own actions, but enlisting others to work with him as well. (See Exhibit A – May 15, 2020 Transcripts.) In it, Shelton is speaking with an individual, who he later unsuccessfully sued because this individual refused to work with him, and has clearly shown he's researched this person as a potential "target" (See Exhibit A, page 2, lines 2-18). He goes on further, to stated "But if I had a judgment against you, I mean, I 100 percent could put a lien against your house. And -- and that would be a sizable amount of equity that I could conceivably take."  (See Exhibit A, page 3, lines 9-12).

He then elaborated on his scheme by saying "MR. SHELTON: I understand. It's like – I research these people a lot before I even write them a demand letter, because I want to know, Okay, do they own real property? Do they have bank accounts? Do they have money? How -- how big is their company? How many employees do they have? All that -- I research that stuff in advance. And if they're a small -- if they're -- if they're driving a brand new Mercedes or -- or a Lambo or something, or they're living in a brand new house, then they can afford to pay me." (See Exhibit A, page 4, lines 21-25 to page 5, lines 1-5). Additionally, he states, "MR. SHELTON: Meanwhile, I know -- I know where the person banks before I even -- before I even file the case, and how much money they have." (See Exhibit A, page 5, lines 19-21).

Further elaboration of his scheme is, "MR. SHELTON: Here's the thing -- here's the thing: Like, I sue the people individually and get – get individual liability. So that's the first hurdle. So you can close your company up, but I'm going -- but I'm going to have a judgment against you personally. And that's going -- that's going to mean that I can still levy your personal account. If you own a real -- if you own real property, I can put a lien against it, or I can even -- I mean, I can take -- take it if I want. If -- if there's equity in it, I can take the house. I mean, that -- there's a ton of weapons -- MR. O'HARE: Would you do that? Would you do that? MR. SHELTON: -- that I can use. Yeah. We're in the process of doing it to someone in -- in Southern California right now. But they're -- they're scumbags." (See Exhibit A, page 6, lines 20-25 to page 7, lines 1-11).

Shelton goes on to stated he, and others, are working together to target and harm these defendants, "MR. SHELTON: Yeah. No. You're right. No. We're pillaging them. No. We're absolutely pillaging them. I mean, that's -- that's the point." (See Exhibit A, page 5, lines 13-15). He further elaborates how he works with others, "MR. SHELTON: Oh, yeah. Absolutely. Because what we do is -- not you in particular, but, like, what – what we'll do is we'll say, Hey, yeah, these

guys just paid me "X" number of dollars, or, Hey, you know, I just collected a judgment against these guys. I just made $20,000. Yo. Any of you guys got any calls? Yeah. Sure have. Let's go after them." (See Exhibit A, page 6, lines 9-15).

This conspiracy is not an ephemeral occurrence either. It is still on going, and proof of this is that soon after the most recent case was initiated, Plaintiffs began receiving very similar threatening messages from "Heidarpour Law Firm, PLLC." (See Exhibit B). Further, they have been attempting to respond, however Heidarpour Law Firm, PLLC appears to be using the exact same tactics as the current Plaintiff. Further, Heidarpour Law Firm, PLLC is a serial filing firm, and a known litigant in the TCPA field. As such, it should come as no surprise that they would be willing to work with the likes of the Plaintiff in this matter, particularly if he tipped them of about the case. Further, based on some investigation, it seems more than likely Plaintiff is working with these other serial litigators as well, including those listed in the report found by the third party investigator. (See Exhibit C). Given that the Defendant has now admitted to participating in such schemes, and apparently employs the same tactics used here in other cases with other serial litigants, this should be taken into consideration in this case, and the motion to dismiss denied.

It is believed that these recordings may be the first evidence, in all of the **many** cases, that Shelton has initiated, that show his pattern of practice in intentional and wide-spread. This comports with Shelton's well-known plan to not only sue companies, but when he is done, to encourage others to do so as well. This is clearly a pattern and practice as discussed in the numerous other cases of Shelton. As such, Plaintiffs reserve the right to include Mr. Reo, and his firm, as defendants at a later time and as for now, ask the motion to dismiss be denied in its entirety.

Date:  June 4, 2020                              By:  /s/ Joshua L. Thomas
                                                            Joshua L. Thomas, Esq.

## **VERIFICATION**

The undersigned, Joshua L. Thomas, Esq. in the within action hereby states that he is the Attorney for the Plaintiffs in this action and verifies that the statements in the foregoing pleading are true and correct to the best of his knowledge, information, and belief.  The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsifications to authorities.

       /s/ Joshua L. Thomas_____
       Joshua L. Thomas, Esq.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JACOVETTI LAW, P.C. et al.<br>PLAINTIFFS,<br><br>V.<br><br>JAMES EVERETT SHELTON, et al.<br>DEFENDANTS. | CIVIL ACTION NO.: 2:20-cv-00163-JDW<br><br>*Civil Action* |

**O R D E R**

AND NOW, this _____ day of _____, 2020, it is hereby ORDERED and DECREED that Motion is DENIED WITH PREJUDICE.


BY THE COURT:


J._____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOVETTI LAW, P.C. et al.<br>PLAINTIFFS,<br><br>V.<br><br>JAMES EVERETT SHELTON, et al.<br>DEFENDANTS. | CIVIL ACTION NO.: 2:20-cv-00163-JDW<br><br>*Civil Action* |

**CERTIFICATE OF SERVICE**

    I, Joshua L. Thomas, Esq., do hereby certify that service of a true and correct copy of the attached pleadings, and attachments thereto, was delivered by first class mail and/or electronic filing to the below named interested parties.

<u>Party</u>
Bryan A. Reo, Esq. P.O. Box 5100 Mentor, OH 44061


Date: <u>June 4, 2020</u>                  By: <u>/s/ Joshua L. Thomas</u>
                                                                Joshua L. Thomas, Esq.