UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JACOVETTI LAW, P.C., ET AT.,** | Case No. 2:20-cv-00163-JDW |
| Plaintiffs, | Hon. Joshua D. Wolson |
| v. | |
| **JAMES EVERETT SHELTON, ET AL.,** | |
| Defendants. | |

### DEFENDANTS JAMES EVERETT SHELTON'S AND FINAL VERDICT SOLUTIONS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

**(ORAL ARGUMENT NOT REQUESTED)**

NOW COMES James Everett Shelton ("Shelton") and Final Verdict Solutions ("FVS") (Shelton and FVS collectively "Defendants"[1]), and hereby propound upon Jacovetti Law, P.C. ("JL") and Robert C. Jacovetti ("Jacovetti") (JL and Jacovetti collectively "Plaintiffs") and this Honorable Court Defendants James Everett Shelton's and Final Verdict Solutions' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11:

1. For the reasons set forth in Defendants James Everett Shelton's and Final Verdict Solutions' Brief in Support of their Motion for Sanctions Pursuant to Fed. R. Civ. P. 11, the Court should award sanctions against Attorney Joshua Thomas and/or Plaintiffs and in favor of Defendants insofar as Plaintiffs' claims against Defendants (1) are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

---

[1] The term "Defendants" for purposes of this Motion does not include Dan Boger, a co-defendant who is not represented by the undersigned attorney.

WHEREFORE, Defendants pray that this Honorable Court will award sanctions against Attorney Joshua Thomas and/or Plaintiffs and in favor of Defendants.

        Respectfully submitted,

        **REO LAW, LLC**

        /s/ Bryan A. Reo
        Bryan A. Reo, Esq.
        P.O. Box 5100
        Mentor, OH 44061
        (T): (216) 505-0811
        (E): reo@reolaw.org
        *Attorney for James Everett Shelton and Final Verdict Solutions*

Dated: June 1, 2020

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JACOVETTI LAW, P.C., ET AT.,** | Case No. 2:20-cv-00163-JDW |
| Plaintiffs, | Hon. Joshua D. Wolson |
| v. | |
| **JAMES EVERETT SHELTON, ET AL.,** | |
| Defendants. | |

**<u>DEFENDANTS JAMES EVERETT SHELTON'S AND FINAL VERDICT SOLUTIONS'
BRIEF IN SUPPORT OF THEIR MOTION FOR SANCTIONS PURSUANT TO FED. R.
CIV. P. 11</u>**

**TABLE OF CONTENTS**

I. TABLE OF AUTHORITIES ................................................................................................ 2

II. ISSUES PRESENTED ....................................................................................................... 4

III. STATEMENT OF FACTS ................................................................................................ 5

IV. LAW & ARGUMENT ...................................................................................................... 6

    A. DEFENDANTS ARE ENTITLED TO SANCTIONS PURSUANT TO FED. R. CIV. P. 11 ................................................................................................................. 6

        1. STANDARD OF REVIEW ..................................................................................... 6

        2. PRINCIPAL POINT OF ARUGMENT ................................................................. 7

            a. THE COMMON LAW JUDICIAL PROCEEDINGS PRIVILEGE BARS PLANTIFFS' CLAIMS ........................................................................... 7

            b. DEFENDANTS ARE NOT ALLEGED BY PLAINTIFFS TO HAVE CONSPIRED WITH THIRD-PARTIES IN AN ILLEGAL MANNER—WHICH IS A NECESSARY ELEMENT FOR A RICO CLAIM .......................................................................................................... 12

V. PRAYER FOR RELIEF .................................................................................................... 15

# I.  TABLE OF AUTHORITIES

**CASE LAW**

*American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ..........................13

*Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277 (3d Cir. 2010) ..................................................................................................................................7

*Binder v. Triangle Publ'ns, Inc.*, 275 A2d 53 (Pa. 1971) ......................................................8

*Clodgo by Clodgo v. Bowman*, 601 A.2d 342 (Pa. Super. Ct. 1992).................................8

*Davis v. Pickell*, 939 F.Supp.2d 771 (E.D. Mich. 2013) ....................................................13

*Day v. John Hopkins Health System Corporation*, 907 F.3d 766 (4th Cir. 2018)................9

*Deck v. Engineered Laminates,* 349 F.3d 1253 (10th Cir. 2003) ......................................12

*Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191 (3rd Cir. 1988)..........7

*Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274 (3d Cir. 1994).................................................6

*Gen. Retirement Systems of Detroit v. Snyder*, 822 F.Supp.2d 686 (E.D. Mich. 2011) ..................................................................................................................................6

*Kim v. Kimm*, 884 F.3d 98 (2nd Cir. 2018).........................................................................12

*Milliner v. Enck*, 709 A.2d 417 (Pa. Super. Ct. 1998) ........................................................8

*Moses v. McWilliams*, 549 A.2d 950 (Pa. Super. Ct. 1988)...............................................8

*Pawlowski v. Smorto*, 588 A.2d 36 (Pa. Super. Ct. 1991) .................................................8

*Raney v. Allstate Ins. Co.,* 370 F.3d 1086 (11th Cir. 2004)...............................................12

*Rao v. BP Products N. Am., Inc.*¸ 589 F.3d 389 (7th Cir. 2009) ........................................13

*Ray v. Spirit Airlines, Inc.*, No. 15-13792, 2016 WL 4578347 (11th Cir. Sept. 2, 2016) ................................................................................................................................13

*Richmond v. McHale*, 35 A.3d 779 (P.A. Super. Ct. 2012)................................................8

*Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997) ................................................6

*Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*,
  719 F.3d 849 (7th Cir. 2013) ................................................................................13

**STATUTORY AND CONSTITUTIONAL LAW**

   18 U.S.C. § 1962(d) ...............................................................................................10, 13

   47 U.S.C. § 227 .................................................................................................................5

   54 Pa.C.S. § 301 ............................................................................................................13

**COURT RULES**

   Fed. R. Civ. P. 11 .......................................................................................................5-7, 15

   Fed. R. Civ. P. 11(a) ........................................................................................................6

   Fed. R. Civ. P. 11(b) ........................................................................................................6

   Fed. R. Civ. P. 11(c)(1) ....................................................................................................6

   Fed. R. Civ. P. 12(b)(6) ...........................................................................................5, 12-13

**MISCELLANEOUS AUTHORITIES**

   None

## II.  ISSUES PRESENTED

1. Whether James Everett Shelton ("Shelton") and Final Verdict Solutions ("FVS") (collectively "Defendants") are entitled to sanctions agaisnt Jacovetti Law, P.C. ("JL") and Robert C. Jacovetti ("Jacovetti") (JL and Jacovetti collectively "Plaintiffs") and/or Attorney Joshua Thomas ("Attorney Thomas") on the basis that Plaintiffs' claims against Defendants are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

      Plaintiffs' Presumed Answers:    No.

      Defendants' Answer:    Yes.

### III.  STATEMENT OF FACTS

On May 4, 2020, Plaintiffs filed Plaintiffs' Amended Complaint (ECF No. 36) against Defendants.  Said Complaint alleges that Defendants are liable to Plaintiffs via RICO, because Defendants sue and/or threaten to sue people and companies which Defendants accuse of violating the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  (ECF No. 36, § 2, ¶¶ 1-55).  The allegations of fact contained within Plaintiffs' Amended Complaint (ECF No. 36) and Plaintiffs' RICO Case Statement (ECF No. 42) are incorporated by reference as if fully set forth herein.

On May 21, 2020, Defendants filed Defendants James Everett Shelton's and Final Verdict Solutions' Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 46).  The allegations of fact and legal arguments contained with said Motion are incorporated by reference as if fully set forth herein.

Plaintiffs' alleged claims against Defendants, however, are facially frivolous for two reasons:  (1) FVS is merely a registered d/b/a of Shelton's—rather than a distinct legal entity—, and as such, Shelton is not alleged by Plaintiffs to have conspired with a third-party in an illegal manner—which is a necessary element for a RICO claim, and (2) Defendants' conduct as alleged by Plaintiffs is absolutely privileged by right via the litigation privilege.

Due to Plaintiff's claims against Defendants being facially without merit, Defendants now seek sanctions against Plaintiffs and/or Attorney Thomas pursuant to Fed. R. Civ. P. 11.

## IV. LAW & ARGUMENT

### A. DEFENDANTS ARE ENTITLED TO SANCTIONS PURSUANT TO FED. R. CIV. P. 11

#### 1. STANDARD OF REVIEW

"A district court exercises wide discretion in determining whether an attorney's conduct was unreasonable, thereby justifying an award of sanctions under Rule 11." *Gen. Retirement Systems of Detroit v. Snyder*, 822 F.Supp.2d 686, 699 (E.D. Mich. 2011) (citing *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997)).

Fed. R. Civ. P. 11(a) provides that every pleading, written motion, and other paper must be signed by at least one attorney of record or by a party if the party is unrepresented. Fed. R. Civ. P. 11(b) states in pertinent part:

> (b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> * * *
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

Under Fed. R. Civ. P. 11, a court may impose an appropriate sanction on an attorney or party who violated the rule after notice and a reasonable opportunity to respond if the court determines that Fed. R. Civ. P. 11 has been violated. Fed. R. Civ. P. 11(c)(1).

Rule 11 imposes a "nondelegable duty" upon the person signing a pleading, written motion, or other paper filed with the Court, "to conduct his own independent analysis of the facts and law which forms the basis of a pleading or motion." *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1277 (3d Cir. 1994) (internal quotation marks and citation omitted). The rule provides that

this person "may be sanctioned if [s/he], among other things, fails to make a reasonable inquiry into the legal legitimacy of a pleading." *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010).

A court must look objectively as to whether the imposition of sanctions would be reasonable under the circumstances. *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3rd Cir. 1988).

### 2. PRINCIPAL POINT OF ARUGMENT

In the instant case, Attorney Thomas signed Plaintiff's Amended Complaint (ECF NO. 36) which alleges claims against Defendants which are predicated upon (1) Shelton allegedly conspiring with FVS—which is legally impossible because FVS is simply a d/b/a of Shelton, and as such, Shelton cannot conspire with himself—, and (2) Shelton's conduct in a prior civil action for which Shelton prevailed—which is legally privileged by right pursuant to the centuries' old litigation privilege.

Plaintiffs' claims against Defendants are simply not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, and as such, Attorney Thomas and/or Plaintiffs should be sanctioned pursuant to Fed. R. Civ. P. 11 for bringing forth frivolous claims which have needlessly caused Defendants to incur costs.

### a. THE COMMON LAW JUDICIAL PROCEEDINGS PRIVILEGE BARS PLANTIFFS' CLAIMS

Plaintiffs' claims against Defendants are facially meritless pursuant to the common law litigation privilege. There are essentially two RICO claims in Plaintiff's Amended Complaint: RICO (conspiracy between tortfeasors) and RICO (wire fraud as the predicate offense). The litigation privilege applies to both.

The judicial proceedings privilege applies to statements made in the "regular course of judicial proceedings" that are "pertinent and material" to the litigation. *Moses v. McWilliams*, 549 A.2d 950, 956 (Pa. Super. Ct. 1988) (*en banc*). This absolute judicial privilege extends to protect statements made in judicial proceedings regardless of the tort claimed. *Clodgo by Clodgo v. Bowman*, 601 A.2d 342, 345 (Pa. Super. Ct. 1992). Pennsylvanian courts have expanded the scope of the judicial proceedings privilege to apply to torts beyond just defamation. *See Moses*, 549 A.2d at 957 ("While it is true that immunity from civil liability in judicial proceedings has been applied most frequently in defamation actions, many courts, including those in Pennsylvania, have extended the immunity from civil liability to other alleged torts when they occur in connection with judicial proceedings.").

"The form of the cause of action is not relevant to application of the privilege; regardless of the tort contained in the complaint, if the communication was made in connection with a judicial proceeding [sic] and was material and relevant to it, the privilege applies." *Id*. at 345. "[T]he privilege extends not only to communications made in open court, but also encompasses pleadings and even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest." *Richmond v. McHale*, 35 A.3d 779, 785 (P.A. Super. Ct. 2012) (quoting *Pawlowski v. Smorto*, 588 A.2d 36, 41-42 (Pa. Super. Ct. 1991)). "All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse." *Binder v. Triangle Publ'ns, Inc.*, 275 A2d 53, 56 (Pa. 1971); see also *Milliner v. Enck*, 709 A.2d 417, 421 (Pa. Super. Ct. 1998) ("[W]here statements are made in the course of judicial proceedings, it is clear that such statements are absolutely privileged, and '[h]however false and malicious, they are not libelous.'").

8

In the instant case, Plaintiffs are essentially suing Defendants for Shelton having previously sent pre-litigation settlement offers to Plaintiffs and other third-parties for what Shelton believes to be TCPA violations, and when these pre-litigation settlement offers do not result in settlement, Shelton thereafter sues said parties.  (ECF No. 36).  Plaintiffs incorrectly allege that the sending of pre-suit settlement offers, engaging in pre-litigation discussion or investigation with the alleged TCPA violator(s), and/or the use of litigation can constitute a RICO violation.  (ECF No. 36).  This is incorrect because the sending of pre-suit settlement offers, pre-suit discussions about attempting to investigate the merits of the claim, and/or the use of litigation falls squarely within the scope of litigation—which is subject to the litigation privilege.

In *Day v. John Hopkins Health System Corporation*, 907 F.3d 766 (4th Cir. 2018), the United States Court of Appeals for the Fourth Circuit dealt with a case in which the "Witness Litigation Privilege"—which appears to be yet another term for the judicial proceedings privilege / judicial proceedings privilege / litigation privilege / judicial privilege—was deemed to apply to RICO claims brought forth in federal court.  Said the *Day* court in pertinent part:

> Our law affords absolute immunity to those persons who aid the truth-seeking mission of the judicial system. This protection extends to judges, prosecutors and witnesses. *See Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Imbler v. Pachtman,* 424 U.S. 409, 427, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Briscoe v. LaHue,* 460 U.S. 325, 330-34, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Immunity for witnesses-commonly known as the Witness Litigation Privilege-is a longstanding and necessary part of the common law's approach to adversarial adjudication. In fact, "the immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law." *See Briscoe*, 460 U.S. at 330-31, 103 S.Ct. 1108. When a witness takes the oath, submitting his own testimony to cross-examination, the common law does not allow his participation to be deterred or undermined by subsequent collateral actions for damages. The vital protection afforded all participants in litigation is unwavering. It is a bedrock of our law today just as it was centuries ago. *See Rehberg v. Paulk,* 566 U.S. 356, 363, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012); *Bradley v. Fisher,* 80 U.S. 13 Wall. 335, 346-47, 20 L.Ed. 646 (1871).

he Witness Litigation Privilege is a broad one. It applies to those who come forward of their own volition as well as those who are compelled, *see Briscoe*, 460 U.S. at 333, 103 S.Ct. 1108; * * * and to those who act with malice or ill will as well as those who are simply mistaken in their recollections. * * * The Witness Litigation Privilege in other words is foundational to any system of adversary justice, and is therefore vital to both federal law and the law of the sovereign states.

* * *

As with any other privilege or immunity, there will of course be questions about its scope. Litigants may fight about who counts as a witness or whether proceedings are sufficiently judicial in character. *See, e.g.*, *Franklin v. Terr,* 201 F.3d 1098, 1102 (9th Cir. 2000) (finding that witnesses who conspire to present perjured testimony are shielded by immunity)[.] * * * Once the witnesses' actions fall within the scope of the immunity, however, its protection is absolute.

* * *

The Witness Litigation Privilege is part of both federal common law and the state law of Maryland. The absolute immunity found in both bodies of law are coextensive. *Compare O'Brien & Gere Eng'rs v. City of Salisbury,* 447 Md. 394, 135 A.3d 473, 482 (2016) ("The litigation privilege dates back 500 years to the English Court of Queen's Bench. The privilege rests on the vital public policy of the free and unfettered administration of justice." (quotations omitted) ), *and* N*orman v. Borison,* 418 Md. 630, 17 A.3d 697, 708 (2011) ("For witnesses ... we employ the 'English' Rule, which provides that the putative tortfeasor enjoys absolute immunity from civil liability."), *with Briscoe*, 460 U.S. at 331, 103 S.Ct. 1108 ("[W]itnesses ha[ve] an absolute privilege ... from subsequent damages liability for their testimony in judicial proceedings.").

* * *

Appellants' sole federal claim arises under the civil cause of action created by the Racketeer Influenced and Corrupt Organizations Act (RICO), Pub. L. No. 91-452, Title IX (1970) (codified at 18 U.S.C. § § 1961-1968 (2012) ). The Witness Litigation Privilege is a part of federal common law. Congress clearly has the power to displace common law protections by statute if it so desires. *See Pulliam v. Allen,* 466 U.S. 522, 529, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Federal courts, however, do not leave this question to ordinary interpretive parsing. Instead, common law immunities function as implied limits on congressional statutes, operative until they are expressly removed.

Congress frequently enacts statutes in harmony with the common law. Sometimes legislators borrow terms familiar to our common law tradition. *See, e.g.*, *Nationwide Mutual Ins. Co. v. Darden,* 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) ("Where Congress uses terms that have accumulated settled

10

meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms."). At other times Congress assumes that common law principles will inform the causes of action that it creates. *See, e.g.*, *Meyer v. Holley,* 537 U.S. 280, 286, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) (applying "ordinary background tort principles" to statutory cause of action under the Fair Housing Act). When Congress seeks to displace a common law immunity, it therefore must do so in clear terms. Absent an indication of a contrary purpose, the courts "must presume that Congress intended to retain the substance of the common law." *Kirtsaeng v. John Wiley & Sons, Inc.,* 568 U.S. 519, 538, 133 S.Ct. 1351, 185 L.Ed.2d 392 (2013) (quoting *Samantar v. Yousuf,* 560 U.S. 305, 130 S.Ct. 2278, 2289-90, 176 L.Ed.2d 1047 (2010) ); *see also United States v. Texas,* 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993). *Cf. Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (requiring "unmistakably clear" language to abrogate state sovereign immunity).

\* \* \*

RICO's civil cause of action manifests no intention to displace the Witness Litigation Privilege. In enacting RICO, Congress stated that "it is the purpose of this Act to seek the eradication of organized crime in the United States." Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 1. To further this purpose, RICO lists a range of prohibited "racketeering activities," 18 U.S.C. § 1961, and allows for both civil and criminal enforcement. *Id.* §§ 1963, 1964. To bring a claim under the civil provision, a plaintiff must demonstrate that he is "injured in his business or property." *Id.* § 1964(c).

Rather than develop a new category of prohibited acts, RICO borrowed other provisions of the federal criminal law to define "racketeering activities." 18 U.S.C. § 1961(1). The statute cross-references various acts of witness tampering and obstruction of justice, but it does not include the criminal sanction for perjury, found at 18 U.S.C. § 1621. As the Second Circuit explained, "Congress did not wish to permit instances of federal or state court perjury as such to constitute a pattern of RICO racketeering activities, [demonstrating] an understandable reluctance to use federal criminal law as a back-stop for all state court litigation." *United States v. Eisen,* 974 F.2d 246, 254 (2d Cir. 1992). Moreover, the RICO statute makes no reference to witness testimony. This is not because the issue slipped Congress' mind. The statute providing witnesses with a general "use immunity" from federal criminal prosecutions was passed as Title II of the very same law that included RICO. *See* Pub. L. No. 91-452, Title II (1970).

Given the complete absence of direction on the subject of witness immunity, as well as the explicit decision to not include perjury within the definition of racketeering activities, we cannot conclude that RICO abrogated witness immunity.

*Day*, 907 F.3d at 771-773, 775-777.

11

Likewise, in *Kim v. Kimm*, 884 F.3d 98 (2nd Cir. 2018), it was held that dismissal via Fed. R. Civ. P. 12(b)(6) of a RICO claim was correct pursuant to the litigation privilege when said RICO claim was based upon the alleged predicate act of fraudulent lawsuits allegedly having been filed by the defendant of the RICO civil action.  See also *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1087-88 (11th Cir. 2004) (deciding that the "alleged conspiracy to extort money through the filing of malicious lawsuits" were not predicate acts of extortion or mail fraud under RICO); *Deck v. Engineered Laminates,* 349 F.3d 1253, 1258 (10th Cir. 2003) (deciding that meritless litigation is not a predicate act of extortion under RICO).

In the instant case, Plaintiffs are suing Defendants for allegedly engaging in racketeering and wire fraud—as the predicate offense for the RICO claim.  (ECF No. 36).  However, these claims fail as a matter of law due to the litigation privilege because both claims are ultimately based upon Defendants allegedly filing frivolous lawsuits.  (ECF No. 36, Count 2, ¶ 14) (Plaintiffs allege that the electronic transmissions used by Defendants is based upon the "filing of frivolous lawsuits").  See *Rayney*; *Deck*; *Kim*.

Due to the litigation privilege which provides Defendants absolute immunity, Plaintiffs' claims against Defendants are legally meritless and Defendants are entitled to dismissal of the same with prejudice.

### b. DEFENDANTS ARE NOT ALLEGED BY PLAINTIFFS TO HAVE CONSPIRED WITH THIRD-PARTIES IN AN ILLEGAL MANNER—WHICH IS A NECESSARY ELEMENT FOR A RICO CLAIM

In Plaintiffs' Amended Complaint, Plaintiffs allege that FVS is "an entity" used by Shelton to commit acts constituting actionable racketeering.  (ECF No. 36, § I, ¶ 4).  Plaintiffs, however, do not specify with allegations of fact as to what kind of entity FVS constitutes, and this is deliberately by design:  FVS is merely a registered fictitious name of Shelton—registered via the

Fictitious Names Act, 54 Pa.C.S. §§ 301, *et seq.*—, and thus Shelton is still acting as a sole proprietor when acting under the FVS banner. FVS was registered by Defendant James Shelton as a fictitious business name (commonly referred to as a "d/b/a/" or "doing business as") with the Pennsylvania Department of State on March 7, 2016. The Court may take judicial notice of Defendant's Rule 7.1 Disclosure Statement and the Fictitious Business Name registration filed with the PA Department of State which was attached as an exhibit to Defendants James Everett Shelton's and Final Verdict Solutions' Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 46).

Plaintiffs are thus essentially accusing Shelton in a conclusory manner of conspiring with himself throughout a portion of Plaintiffs' Amended Complaint, and this does not satisfy the conspiracy element which is necessary for a RICO conspiracy claim. See, e.g., *Davis v. Pickell*, 939 F.Supp.2d 771 (E.D. Mich. 2013) (under the intracorporate-conspiracy doctrine, a corporation cannot ordinarily conspire with its agents or employees insofar as one cannot as a matter of law conspire with oneself), *Ray v. Spirit Airlines, Inc.*, No. 15-13792, 2016 WL 4578347 (11th Cir. Sept. 2, 2016) (holding that a corporation cannot form an enterprise with its own agents).

To state a claim under 18 U.S.C. § 1962(d), the plaintiff must allege the existence of "an agreement to participate in an endeavor which, if completed, would constitute a violation" of the RICO statute. *Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013). Allegations of parallel conduct that could just as easily suggest independent, legitimate action, accompanied by nothing more than conclusory assertions of conspiracy, are insufficient to state a RICO conspiracy claim. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010); *Rao v. BP Products N. Am., Inc.¸* 589 F.3d 389 (7th Cir.

2009) (affirming dismissal of RICO conspiracy claim that contained only boilerplate allegations of RICO conspiracy).

In the instant case, not only did Plaintiffs not meaningfully allege that Shelton conspired with FVS—because Plaintiffs did not allege as fact what kind of "entity" FVS constitutes and Plaintiffs did not allege that FVS is a separate and distinct legal entity from Shelton[2]—, but Plaintiffs also did not meaningfully allege facts sufficient to plead that Defendants engaged in racketeering with Dan Boger ("Boger") or any other third-party. Specifically, Plaintiffs only allege that Defendants have "colluded" with Boger because Shelton allegedly discussed with Boger about how Shelton engages in informal pre-litigation investigation to determine whether Shelton's claims against tortfeasors are viable and to make sure that tortfeasors Shelton elects to pursue for violations of the TCPA are even collectible or otherwise have the means to satisfy a civil judgment. (ECF No. 36, § II, ¶¶ 40-44, 51). As such, Plaintiffs did not plead in the manner required by *Twombly* and *Iqbal* that Defendants even engaged in racketeering. Nothing Defendants are alleged to have done by Plaintiffs constitute a RICO violation, much less a conspiracy to commit RICO violations.

---

[2] Final Verdict Solutions is not a separate legal entity from Mr. Shelton, as previously discussed, it is a fictitious name owned and registered to Defendant James Shelton's individual name. Also see ECF No. 9, FVS's Rule 7.1 disclosure statement.

## V.  PRAYER FOR RELIEF

In light of Plaintiffs' claims against Defendants not being warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, the Court can and should impose sanctions against Plaintiffs and/or Attorney Thomas and in favor of Defendants pursuant to Fed. R. Civ. P. 11.

        Respectfully submitted,

        **REO LAW, LLC**


        /s/ Bryan A. Reo
        Bryan A. Reo, Esq.
        P.O. Box 5100
        Mentor, OH 44061
        (T):  (216) 505-0811
        (E):  reo@reolaw.org
        *Attorney for James Everett Shelton and Final Verdict Solutions*

Dated:  June 1, 2020

## PRE-MOTION FILING CERTIFICATE OF SERVICE

I, Bryan A. Reo, affirm that I am an attorney of record for a party to the above-captioned civil action, and on June 1, 2020, I served Defendants James Everett Shelton's and Final Verdict Solutions' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 and Defendants James Everett Shelton's and Final Verdict Solutions' Brief in Support of their Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 upon Joshua L. Thomas, 225 Wilmington-West Chester Pk., Ste. 200, Chadds Ford, PA 19317, by placing the same in a First Class postage-prepaid, properly addressed, and sealed envelope and in the United States Mail.  Furthermore, I also emailed a PDF version of said documents to <joshualthomas@gmail.com> on June 1, 2020.

/s/ Bryan A. Reo
Bryan A. Reo, Esq.
P.O. Box 5100
Mentor, OH 44061
(T):  (216) 505-0811
(E):  reo@reolaw.org
*Attorney for James Everett Shelton and Final Verdict Solutions*

Dated:  June 1, 2020

**CERTIFICATE OF SERVICE**

I, Bryan A. Reo, affirm that I am an attorney of record for a party to the above-captioned civil action, and on June 23, 2020, I submitted Defendants James Everett Shelton's and Final Verdict Solutions' Motion for Sanctions to the Court's Electronic Filing System, which should provide notification to all attorneys of record that said filing has been submitted.

/s/ Bryan A. Reo
Bryan A. Reo
P.O. Box 5100
Mentor, OH 44061
(T):  (216) 505-0811
(E):  reo@reolaw.org
*Attorney for James Everett Shelton and Final Verdict Solutions*

Dated:  June 23, 2020