IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOVETTI LAW, P.C. et al.<br>PLAINTIFFS,<br><br>V.<br><br>JAMES EVERETT SHELTON, et al.<br>DEFENDANTS. | CIVIL ACTION NO.: 2:20-cv-00163-JDW<br><br>*Civil Action* |

**BRIEF IN OPPOSITION TO THE MOTION FOR SANCTIONS**

Defendants' motions again utterly lacks merit and was again filed for an improper purpose, and its denial should be compounded by a corresponding levy of sanctions and costs against Defendants. Defendants have used the filing of the motion, not as a means to filter a frivolous claim but as a bullying tactic intended to intimidate Plaintiffs into withdrawing legitimate claims This misuse of Rule 11 is in and of itself sanctionable. Indeed, the Advisory Committee notes point out that Rule 11 should not be used "to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." See Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida, 827 F.2d 1454, 1458 (11th Cir. 1987) (affirming the denial of sanctions where the issues were fairly debatable and not easily resolved, and there was no clear binding precedent).

The standard under Rule 11 is "stringent" because sanctions "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes, 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases, and 3) increase tensions among the litigating bar and between [the] bench and [the] bar." Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988). While the focus of Rule

11 is on whether a claim is wholly without merit, and is not dictated by whether resources will be expended in deciding the motion, Rule 11 motions should conserve rather than misuse judicial resources. See Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 99 (3d Cir. 1988) ("Rather than misusing scarce resources, [the] timely filing and disposition of Rule 11 motions should conserve judicial energies.").

Defendants' motions fail not only for its lack of merit, but it also violates the ethical underpinnings of Rule 11. Rule 11 imposes a duty on the party seeking sanctions to be circumspect in pursuing such a drastic remedy and to not to use the device for an improper purpose lest it may discourage expansion of the law through creative legal theories. See Ario v. Underwriting Members of Syndicate 53 at Lloyds, 618 F.3d 277, 297 (3d Cir. 2010) (Rule 11 "should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories.")(citations omitted). Sanctions are a drastic remedy reserved for only the most extraordinary circumstances. See, Park v. Seoul Broad. Sys. Co., 2008 U.S. Dist. LEXIS 17277, at *1 (S.D.N.Y. Mar. 6, 2008). Whether a claim can survive on the merits is wholly distinct from whether that claim is frivolous. See Abdelhamid v. Altria Group, Inc., 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007)("'When divining the point at which an argument turns from merely losing to losing and sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading.'")

The motion is procedurally deficient as well, as there was no attempt to send a safe harbor letter, in this matter, merely the filing of the frivolous motion and bold faced threats. In fact, Defendant's attorney has now taken to making the exact same types of threats as his client has done. (See Exhibit A – Email chain and see broadly Exhibit B – February 19, 2020 Transcripts and Exhibit C – May 15, 2020 Transcripts). As previously stated, such a letter was in fact sent by Jacovetti Law, P.C. and Robert C. Jacovetti on December 5, 2018. Ultimately, for the reasons set

forth in that letter and the subsequent motion to vacate that was filed by by Jacovetti Law, P.C. and Robert C. Jacovetti, that case was withdrawn against those parties three months later on February 6, 2019. However, the damage as discussed in this case was still done, hence why they still have claims in this matter.

Further, in contrast to defendants claims, there is evidence of conspiracy with third parties, not even including Mr. Reo, who may himself be in on the scheme. (See Exhibit C – May 15, 2020 Transcripts.) In it, Shelton is speaking with an individual, who he later unsuccessfully sued because this individual refused to work with him, and has clearly shown he's researched this person as a potential "target" (See Exhibit C, page 2, lines 2-18). He goes on further, to stated "But if I had a judgment against you, I mean, I 100 percent could put a lien against your house. And -- and that would be a sizable amount of equity that I could conceivably take." (See Exhibit C, page 3, lines 9-12).

He then elaborated on his scheme by saying "MR. SHELTON: I understand. It's like – I research these people a lot before I even write them a demand letter, because I want to know, Okay, do they own real property? Do they have bank accounts? Do they have money? How -- how big is their company? How many employees do they have? All that -- I research that stuff in advance. And if they're a small -- if they're -- if they're driving a brand new Mercedes or -- or a Lambo or something, or they're living in a brand new house, then they can afford to pay me." (See Exhibit C, page 4, lines 21-25 to page 5, lines 1-5). Additionally, he states, "MR. SHELTON: Meanwhile, I know -- I know where the person banks before I even -- before I even file the case, and how much money they have." (See Exhibit C, page 5, lines 19-21).

Further elaboration of his scheme is, "MR. SHELTON: Here's the thing -- here's the thing:

Like, I sue the people individually and get – get individual liability. So that's the first hurdle. So you can close your company up, but I'm going -- but I'm going to have a judgment against you personally. And that's going -- that's going to mean that I can still levy your personal account. If you own a real -- if you own real property, I can put a lien against it, or I can even -- I mean, I can take -- take it if I want. If -- if there's equity in it, I can take the house. I mean, that -- there's a ton of weapons -- MR. O'HARE: Would you do that? Would you do that? MR. SHELTON: -- that I can use. Yeah. We're in the process of doing it to someone in -- in Southern California right now. But they're -- they're scumbags." (See Exhibit C, page 6, lines 20-25 to page 7, lines 1-11).

Shelton goes on to stated he, and others, are working together to target and harm these defendants, "MR. SHELTON: Yeah. No. You're right. No. We're pillaging them. No. We're absolutely pillaging them. I mean, that's -- that's the point." (See Exhibit C, page 5, lines 13-15). He further elaborates how he works with others, "MR. SHELTON: Oh, yeah. Absolutely. Because what we do is -- not you in particular, but, like, what – what we'll do is we'll say, Hey, yeah, these guys just paid me "X" number of dollars, or, Hey, you know, I just collected a judgment against these guys. I just made $20,000. Yo. Any of you guys got any calls? Yeah. Sure have. Let's go after them." (See Exhibit C, page 6, lines 9-15).

This conspiracy is not an ephemeral occurrence either. It is still on going, and proof of this is that soon after the most recent case was initiated, Defendants begin receiving very similar threatening messages from "Heidarpour Law Firm, PLLC." (See Exhibit D). Further, they have been attempting to respond, however Heidarpour Law Firm, PLLC appears to be using the exact same tactics as the current Plaintiff. Further, Heidarpour Law Firm, PLLC is a serial filing firm, and a known litigant in the TCPA field. As such, it should come as no surprise that they would be willing to work with the likes of the Plaintiff in this matter, particularly if he tipped them of about

the case. Further, based on some investigation, it seems more than likely Plaintiff is working with these other serial litigators as well, including those listed in the report found by the third party investigator. (See Exhibit E). Given that the Plaintiff has now admitted to participating in such schemes, and apparently employs the same tactics used here in other cases with other serial litigants, this should be taken into consideration in this case, it should be reopened and further discovery be permitted, to find out if any of Plaintiff's claims are actually legitimate, or merely part of the ongoing scheme. Further, it should be pointed out that substantially all "outstanding discovery" in this case was in fact responded to, via prior pleadings and actual submissions sent to plaintiff, and relying on the alleged lack of discovery by Plaintiff to procure their summary judgment was improper.

As for sanctionable behavior, there is reason to believe that Mr. Reo, in fact, should be sanctioned, as he apparently goes along with this scheme by virtue of often joining in on the cases for Mr. Shelton after he files them, as previously stated and as shown in his most recent email where he uses the exact same type of language as his client. This is clearly an attempt to shirk his ethical duties, as the scheme seems to be Shelton files the cases Pro Se, and makes all of the wild accusations he wants, such as again Plaintiffs. If he goes too far and after the damage is done, and more specifically, if the victims, such as the Plaintiffs in this matter, don't simply pay to make him go away, then Mr. Reo comes in, and "cleans up" the accusations of Shelton. This is clearly a pattern and practice as discussed in the numerous other cases of Shelton. As such, Plaintiffs reserve the right to include Mr. Reo, and his firm, as defendants at a later time. Further, this motion for sanctions by Defendants is of a sanctionable nature, and as such, we ask the attorneys fees be paid to Plaintiffs for the response.

Date: _July 14, 2020_  By: _/s/ Joshua L. Thomas_
                                                                                    Joshua L. Thomas, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOVETTI LAW, P.C. et al.<br>PLAINTIFFS,<br><br>V.<br><br>JAMES EVERETT SHELTON, et al.<br>DEFENDANTS. | CIVIL ACTION NO.: 2:20-cv-00163-JDW<br><br>*Civil Action* |

**CERTIFICATE OF SERVICE**

    I, Joshua L. Thomas, Esq., do hereby certify that service of a true and correct copy of the attached pleadings, and attachments thereto, was delivered by first class mail and/or electronic filing to the below named interested parties.

<u>Party</u>
Bryan A. Reo, Esq. P.O. Box 5100 Mentor, OH 44061


Date: July 14, 2020              By: /s/ Joshua L. Thomas
                                                            Joshua L. Thomas, Esq.