**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **JACOVETTI LAW, P.C., et al.**,<br><br>*Plaintiffs*,<br><br>v.<br><br>**JAMES EVERETT SHELTON, et al.**,<br><br>*Defendants*. | Case No. 2:20-cv-00163-JDW |

## MEMORANDUM

Civil RICO might be the "litigation equivalent of a thermonuclear device,"[1] but this case is a dud. The Jacovetti Parties[2] have not alleged predicate acts to support their RICO claim. At best, they have alleged that James Everett Shelton has turned enforcement of the Telephone Consumer Protection Act into a business and that he takes pecuniary considerations into account when he decides who to sue. Nothing about that constitutes a RICO violation. The Court will therefore grant the FVS Parties'[3] motion to dismiss the complaint with prejudice.

## BACKGROUND

### A.     Mr. Shelton's TCPA Enforcement Activity

James Shelton has turned the private right of action under the TCPA into a business. He has filed dozens of cases in this District and in other districts around the country. The Jacovetti Parties claim to have transcripts of Mr. Shelton discussing his approach to TCPA litigation, including (a) the amount that he expects to extract in settlements and (b) his pre-suit research into

---

[1] *E.g., Turner v. New York Rosbruch/Harnik, Inc.*, 84 F. Supp.3d 161, 167 (E.D.N.Y. 2015).
[2] The "Jacovetti Parties" refers to Plaintiffs Robert Jacovetti and Jacovetti Law, P.C.
[3] The "FVS Parties" include Mr. Shelton and Defendant Final Verdict Solutions.

potential defendants' ability to pay a judgment. According to the Jacovetti Parties, Mr. Shelton talks with other serial TCPA plaintiffs.

**B.     The TCPA Case**

Mr. Shelton sued the Jacovetti Parties and FCS Capital LLC, Emil Yashayev, and Barry Shargel (the "FCS Parties") in *Shelton v. FCS Capital LLC, et al.*, No. 2:18-cv-3723 (the "TCPA Case"). His initial complaint in that case named only the FCS Parties. He filed an amended complaint that added the Jacovetti Parties. When the defendants in the case did not respond to the complaint, Mr. Shelton sought and obtained a default. The Court vacated the default. Mr. Shelton then withdrew his claims against the Jacovetti Parties.

The Jacovetti Parties claim that Mr. Shelton's claims against them were a "setup for the sole purpose of extracting as [sic] settlement."[4] They contend that the facts in Mr. Shelton's complaint were inaccurate. They speculate that a former employee might have engaged in some of the conduct to retaliate against them for firing him. They also claim that Mr. Shelton's amended complaint contained factual errors.

The TCPA Case proceeded against the FCS Parties. The FCS Parties did not respond to discovery in that case. Then, they did not respond to a summary judgment motion. On December 11, 2019, the Court granted the summary judgment motion. Since then, the FCS Parties have twice asked the Court to reconsider its decision. The Court has denied both of their attempts, and they have appealed the most recent decision. In addition, they have tried to avoid discovery in aid of execution in that case.

---

[4] ECF No. 36 at ¶ 13.

C.      **Procedural History of This Case**

On January 9, 2020, the FCS Parties and the Jacovetti Parties filed this case against the FVS Parties and Dan Boger. On January 27, 2020, the Court ordered Jacovetti Law and FCS Capital to file corporate disclosure statements by February 3, 2020. Neither did. They also ignored an Order to Show Cause in which the Court instructed them to explain why they did not comply. That odyssey ended with the Court sanctioning Plaintiffs' counsel Joshua Thomas for his repeated failure to comply with deadlines and Court orders.

The FVS Parties answered the complaint on February 10, 2020. On February 11, 2020, the FVS Parties moved for judgment on the pleadings. Neither the Jacovetti Parties nor the FCS Parties responded, so the Court granted the Motion as unopposed on February 27, 2020. On March 6, 2020, the Jacovetti Parties and FCS Parties filed a motion asking the Court to re-open the case and to permit them to file an amended complaint. On April 27, 2020, the Court granted that motion. The Amended Complaint drops the FCS Parties from the case and states claims only on behalf of the Jacovetti Parties. In Count I, the Amended Complaint asserts a violation of RICO through a pattern of wire fraud. It does not specify which section of RICO is at issue. Count II asserts a separate claim for wire fraud under 28 U.S.C. § 1343.

On May 11, 2020, the Jacovetti Parties filed a RICO Case Statement. In their Case Statement, they explain that they assert claims for violations of 18 U.S.C. §§ 1962(a) and (d). They describe the predicate acts as violations of the mail and wire fraud statutes. They posit the existence of an association-in-fact as the illegal enterprise. They claim as damages the attorneys' fees that the Jacovetti Parties paid to defend the TCPA Case. On May 21, 2020, the FVS Parties filed a motion to dismiss the claims against them.

3

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[5] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] A conclusory recitation of the elements of a cause of action is not sufficient. Instead, the plaintiff must allege facts necessary to make out each element of the claim. In other words, the complaint must contain facts that, if proven later, support a conclusion that a cause of action can be established.[7]

To determine the sufficiency of a complaint, the Court must take the following three steps: (1) the Court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify the allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.[8] Where, as here, a plaintiff bases a RICO claim on mail or wire fraud, it must plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.[9]

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quote omitted).
[6] *Id.*
[7] *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).
[8] *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2010).
[9] *See Federico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

**ANALYSIS**

In the Amended Complaint, the Jacovetti Parties assert claims arising under "18 U.S.C. § 1962(a)-(c)."[10]   In the RICO Case Statement, they say that their claims arise under Sections 1962(a) and (d). All of those statutory subsections require proof of a pattern of racketeering activity. RICO defines "racketeering activity" as any of a series of specified criminal acts, including mail and wire fraud.[11] The elements of mail and wire fraud are (1) "a scheme or artifice to defraud for the purpose of obtaining money or property," (2) "participation by the defendant with specific intent to defraud," and (3) "use of the mails or  wire transmissions in furtherance of the scheme."[12] The scheme to defraud "need not be fraudulent on its face but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension."[13]

The FVS Parties' motion to dismiss challenges the Amended Complaint's allegations of racketeering activity, although it is not a model of clarity in its argument. Under a heading about a "common law judicial proceedings privilege," the FVS Parties argue to a significant degree about Pennsylvania state law's judicial proceedings privilege. The Court has already rejected the applicability of that doctrine in this case,[14] so it is not clear why the FVS Parties persist with the argument. However, within that argument, the FVS Parties argue on several occasions that their litigation conduct does not constitute a predicate act for RICO purposes.[15] These arguments suffice

---

[10] ECF No. 39 at ¶ 8.

[11] *See* 18 U.S.C. § 1961(1).

[12] *Nat'l Sec. Sys. V. Iola*, 700 F.3d 65, 105 (3d Cir. 2012).

[13] *Walter v. Palisades Collection, LLC*, 480 F. Supp.2d 797, 803 (E.D. Pa. 2007) (quoting *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978)).

[14] ECF No. 33 at 3-4.

[15] ECF No. 46 at 10 ("Plaintiffs incorrectly allege that the sending of pre-suit settlement offers, engaging in pre-litigation discussion or investigation with the alleged TCPA violator(s), and/or the use of litigation can constitute a RICO violation".); *id.* at 13 ("To the extent that Plaintiffs claim

to raise the question. The Jacovetti Parties do not respond at all. However, the Court does not treat the Jacovetti Parties as having conceded the issue. Instead, the Court has analyzed it for itself.

The Court concludes that the Amended Complaint does not allege racketeering activity. The Amended Complaint primarily disputes the facts that Mr. Shelton alleged in the TCPA Action. But even if Mr. Shelton made incorrect allegations in the TCPA Action, that litigation conduct does not constitute a scheme or artifice to defraud because absent corrupt activity like bribing witnesses or parties, litigation conduct does not constitute a scheme or artifice to defraud for purposes of a civil RICO case.[16]

The Amended Complaint also points to transcripts of conversations in which Mr. Shelton discussed his litigation strategy. Those conversations demonstrate that Mr. Shelton investigates potential defendants before he sues them to ensure they can satisfy a judgment. That pecuniary approach to litigation might be unseemly, as the Court has observed before. But it is not illegal. Certainly, it does not demonstrate that Mr. Shelton intends to cheat or defraud anyone. It only shows that he intends to collect if he prevails in litigation.

## CONCLUSION

At most, the Jacovetti Parties have alleged that Mr. Shelton is aggressive in his pursuit of litigation and his collection of judgments. None of that is a basis for a civil RICO claim. To the extent they view this case as a way to dispute the facts from the TCPA Action, it is not that, either.

---

that Mr. Shelton sued for 'fabricated claims', such conduct would not constitute an actionable RICO violation.").

[16] *See Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016); *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1087-88 (11th Cir. 2004); *Deck v. Engineered Laminates*, 349 F.3d 1086, 1087-88 (10th Cir. 2003); *Feld Entn't Inc. v. Am. Soc. For the Prevention of Cruelty to Animals*, 873 F. Supp.2d 288, 318 (D.D.C. 2012); *Luther v. AM. Nat. Bank of Minn.*, Civ. No. 12-1085, 2012 WL 5471123, at * 6 (D. Minn. Oct. 11, 2012) (collecting cases).

A RICO claim is a serious charge that requires serious facts. Those are lacking here. Because there is no way for the Jacovetti Parties to cure that failure, and because they have already had an opportunity to amend their complaint, the Court will dismiss their claims with prejudice. An appropriate Order follows.

                                        **BY THE COURT:**


                                        */s/ Joshua D. Wolson*
                                        JOSHUA D. WOLSON, J.

September 1, 2020